D. McDONALD *vs.* M. GREEN, *et al.*, Assignees.

APPEAL FROM DECISION OF McCULLY, J.

APRIL TERM, 1885.

JUDD, C. J.; McCULLY and AUSTIN, JJ.

Under the bankruptcy jurisdiction of the Supreme Court the assignees cannot be compelled to make a certain sale; the remedy is Specific Performance in Equity.

Assignees having advertised for bids for the bankrupt's stock, held, under the terms of the advertisement, that the bids must be for cash; that an offer of $100 more than the highest bid is invalid; and that the assignees cannot be compelled to accept the highest or any bid.

Decree of the Vice-Chancellor reversed.

OPINION OF THE COURT, BY McCULLY, J.

THE statement of this case for the purpose of explanation of the matter now before the Court is as follows:

Kennedy & Co. were decreed bankrupt on a petition of sundry creditors, and the defendants, who are the principal creditors, were duly elected assignees. The business of the bankrupt firm was keeping a store or bazaar in Honolulu for the sale of varieties of small wares, with a branch store in Wailuku, Maui. The assignees, with a view to closing the estate and realizing promptly, put out the following advertisement:

"Estate of Kennedy & Co. In Bankruptcy. The assignees are now prepared to receive sealed bids for the stock, book-accounts and general assets of the above estate as a whole. Bids will close Monday, March 9th, at 12 o'clock noon. Any information to aid bidders will be willingly given by the undersigned.

"M. GREEN,
"W. F. REYNOLDS,
"Office of M. Phillips & Co. Assignees:"

and thereafter came before the Justice who was holding the bankruptcy proceedings with a petition and motion for the confirmation of a sale to Reynolds, one of the above defendants. The

opinion recited below gives an account of the various bids received. The Justice overruled the motion to confirm the sale to Reynolds.

The confirmation of the Court was asked under the provision of Sec. 12 of the Bankruptcy Act of 1884, that assignees may dispose of all property of the bankrupt at either public or private sale, but that private sales shall be valid only upon confirmation of the Court having jurisdiction of the proceedings. Upon the Court denying the motion the present plaintiff brought his bill in equity for a decree requiring the assignees to accept his bid as being the highest regular and valid bid made under the call for tenders.

The first question raised for consideration is of the jurisdiction of the Court in Equity. If the method of advertising for sealed tenders was a " public sale," it did not require the confirmation of the Court in Bankruptcy ; if it was a ",private sale," why should not the Court have proceeded to confirm the sale to the highest bidder, and why, then, should equity take jurisdiction of matters provided for and within the jurisdiction of another Court. To answer these questions it does not seem to us to be necessary to determine whether a sale by this method is a " public" or a " private " sale. If it should be considered to stand with *viva voce* auctions as a public sale, then we may remark that while the statute requires private sales to be confirmed, it does not prohibit the confirmation of a public sale if parties concerned seek it, and there might be circumstances which would make such a course desirable. It was only the sale to Reynolds for which the assignees asked confirmation, or rather asked leave to make. They did not submit to the Court the proposition to confirm any other sale. They plainly expressed themselves unwilling to make any other, unless it should be to West on his offer to buy on credit, which the Court would not entertain. They would not make the sale to this plaintiff. It seems to us, then, that it was not within the jurisdiction of the Court in Bankruptcy by its powers of confirming a sale to compel the assignees to make a certain sale. The plaintiff, then, being without this recourse, was left to his remedy in equity upon the jurisdiction for specific performance. The findings and the rulings of the Court in equity were as follows :

1. "The tender by McDonald was presented after 12 o'clock noon of Monday, March 9th. It was endorsed on the envelope,

'Messrs. Green and Reynolds, assignees of Kennedy & Co. Sealed tenders for the assets.' Under the advertised call for bids the assignees might have refused to receive this, as being barred by the time. But they did not refuse it. It was superscribed as a bid, and they opened it at the time, they being in session opening and examining the bids. In the written motion before the Court in Bankruptcy they report this as one of the bids received by them. It must be considered that the objection of being late was waived by the assignees at least.

2. "It seems within the province of this case, as the above motion was introduced, to say here that the bid of $5,000, in four payments up to twelve months' time, with interest and approved security, could not be considered a bid which the assignees might receive. Their duty is to realize cash with which they may make dividends. Notes would be only the substitution of a new debtor for the bankrupt one. Approved securities may fail. The call for bids not speaking of credit bids, only cash would be presumed, and it would not be fair and equal to permit credit bids to compete on their face figures with cash offers.

"The offer of Reynolds to give $100 more than any other bid cannot be treated as a valid bid. See *Webster vs. French,* 11 Ill., 254, cited in note, page 120, Bateman on Auctions. It stands to reason. If every bid was of this description, what would be the price bid! If there were only one such tender made, among others which specified amounts, the only thing certain would be that every such regular bid must fail. So it is quite needless to consider the other objection, whether, as Reynolds is an assignee, he could become a purchaser by any bid.

3. "The plaintiff's bid being now the highest legitimate bid, what is his right in the premises? The assignees, defendant, say that they are not bound to take the tender of the highest or any bidder. This reservation is not made in the call for bids. That if no bid had been for more than a nominal sum, and altogether incommensurate with the value of the stock they would not be justified in taking the highest. That there was an implied discretion as to the quality of the bids.

"Upon this last point, as this is to be a sale for cash down, there can be no discretion to sell if the cash is placed in hand and to va-

cate a bid that is without a payment. The plaintiff here is met by a refusal to take his offer and has not failed toward payment. He can make the payment. The assignees do not close the contract with him because he cannot pay, but because they now find they can do better.

"Concerning the discretion, power or right to reject the highest and all bids for a merely nominal sum, when no reservation has been made in the call for bids, it may exist. But what are the facts in this case. The real question is not what percentage upon the amount of claims does any bid make, or make to the actual cost of the stock, but what proportion does the bid bear to the best net amount which practically can be realized. The testimony of the two assignees, who are by much the largest creditors, is that in view of the assets they would consider themselves fortunate to receive 60 per cent. Something less than that would be a good realization. This is their valuation based on considerable knowledge of the stock.

"The plaintiffs' tender, $4,375, is about 55 per cent. of the claims proved. I do not consider that it is grossly inadequate. It is barely under the valuation of the property as per the defendants' testimony. Kennedy has given a higher valuation, which, under the circumstances, I do not accept as realizable.

"Now, can the defendants, under the terms of their call for bids, refuse a fair offer ? The general rule of law is that obligations in a contract are reciprocal. Could the defendants hold the plaintiff to his ? I think they could, and I think he is entitled to a decree requiring assignment and delivery of the assets on payment of the amount of his bid."

With the holding of the Court below respecting its jurisdiction, and the character and validity of the bids, we agree.

The question of the obligation of the defendants to accept the highest bid, is one upon which we find but little direct authority to guide us. The cases of auction sales are to the effect that the contract with the purchaser is closed when by the fall of the hammer the bid is accepted. The bid may be withdrawn before such acceptance. We have no occasion to consider here the law governing by-bidding and bidding by the auctioneer, for the only thing resembling that, Reynold's bid, has been thrown out, and

we have declined to take notice of sundry proffers of a higher price made subsequently to the opening of bids on the 9th of March.

The case of *Spencer vs. Harding*, 5 English Law Reports, p. 561, was where defendants sent out a circular as follows:

"We are instructed to offer to the wholesale trade for sale by tender the stock in trade of A xx at a discount, in one lot, payment to be made in cash; the tenders will be received and opened at our office, etc."

The Court held that this did not amount to a contract or promise to sell to the person who made the highest tender, but that in the absence of any words to intimate that the highest bidder is to be the purchaser, it was a mere attempt to ascertain whether an offer can be obtained within such a margin as sellers are willing to adopt. The advertisement in the case at bar likewise contains no offer to accept the highest or any bid, as on the other hand it does not reserve the privilege of not accepting any of them. Herein it differs from an open auction when the contract is closed at once by the fall of the hammer accepting the highest bid, or an open bidding-in if there has been a bid reserved, or an upset price. The defendants not having held out that they would accept the highest bid would not seem to be bound by it. The tender or offer must stand as merely such until acceptance has made it a contract. We do not agree with the observation of the Court below that, because the defendants might bind the plaintiff by accepting his offer, he can claim a decree compelling them to accept it, for they do not say that the highest bidder shall be the purchaser. There can be nothing inequitable in limiting the rights of the plaintiff strictly to the defendants' offer, which amounts only to this, that they will receive and consider offers for the property. No one making a tender has a right to expect anything more than what is so offered. Nor will the fact that a fair and not inadequate price is offered bind the defendants to accept it, if they have not held out that they will be bound by the highest good bid.

We therefore set aside the decree made below and dismiss the plaintiff's bill ; costs to be divided.

*A. S. Hartwell* and *Jno. Austin*, for plaintiff.

*R. F. Bickerton*, for defendants.

Honolulu, April 14, 1885.