RICHARD C. SUTTON *v.* HAWAIIAN TRUST CO., LTD., A. F. MAHN AND EDWARD C. HUSTACE, ADMINISTRATORS OF THE ESTATE OF VICTORIA KATHLEEN WARD, DECEASED.

No. 4082.

ARGUED JUNE 4, 1959.                    DECIDED JUNE 12, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

The guardians of Victoria Kathleen Ward, an incompetent, secured a license to sell certain real estate of their ward. This license left to the discretion of the guardians the designation of the time and place of sale and authorized the employment of Cooke Trust Company, Limited, to conduct the sale. The guardians advertised in the Honolulu Advertiser a notice of sale of certain undivided interests of Victoria Kathleen Ward, an incompetent, such sale to be on May 8, 1958, at 9 o'clock a.m., at the mauka entrance to the Judiciary Building in Honolulu, the upset price being set at $7,500, with cash of 25 per cent to be paid upon the fall of the hammer and the balance to be paid upon confirmation of the sale and delivery of the deed. The notice provided that inquiries be addressed to Henshaw, Conroy & Hamilton, 310 Gasco Building, 1060 Bishop Street, Honolulu, T. H.

On the morning of April 14, 1958, appellant Richard C. Sutton went to the offices of said attorneys to secure information on the above properties. The attorney inquired why Richard C. Sutton wished to big on the properties; however, he gave Mr. Sutton a copy of the tax keys of the various properties and the names of the present lessees, and referred Sutton to the Robinson Estate, sixth floor of the Capital Investment Building, for further information. Sutton proceeded to the offices of the Robinson Estate and was again asked the reason he wished to bid on the properties, and was told the Robinson Estate was bidding in the property interests of Victoria Kathleen Ward.

On May 7, 1958, Richard Sutton received a phone call from one of the attorneys for the guardians who asked Sutton if he was interested in bidding at the sale scheduled for the next day and told Mr. Sutton that they might, or might not, postpone the sale. The attorney finally stated he would notify Mr. Sutton if the sale was to be postponed. Such notice was mailed to Mr. Sutton but

was not received by him until after the time designated for the auction.

In the meantime the guardians had decided not to sell and no one was employed to conduct the sale. Mr. Sutton was present at the mauka entrance to the Judiciary Building on the day and at the time designated for the sale. Mr. Sutton was informed about 9 o'clock a.m. that there would be no sale. However, Sutton encountered an employee of the Cooke Trust Company, Limited, and purported to make a bid of $8,000 for the properties although no auction was held and appellant was informed that no auction would be held on that date. The appellant then made a deposit of $2,000 with the clerk of the first circuit court and brought this proceeding as a motion for order confirming sale of real property and directing a conveyance before the probate court. The contention was made that since there was no court order postponing the sale, the guardians were equitably estopped to deny the public auction did not in fact take place.

The court found Richard Sutton appeared at the time and place indicated in the published notice; that he made a purported bid of $8,000 to an officer of the Cooke Trust Company, Limited, whom he accosted there, and that he finally induced the chief clerk of the first judicial circuit to accept a deposit of $2,000 which was supposed to be 25 per cent cash payment on his "bid."

The court decided that the principle of equitable estoppel could have no application to the abandonment of a judicial sale to be made pursuant to a license to sell, ruling as a matter of law that a published notice was not an offer but solely an invitation to submit bids.

The court further instructed the guardians to notify Richard C. Sutton in the event the guardians deemed it to the best interests of the estate to exercise the authority conferred upon them by the license to sell and instructed the chief clerk to refund the money deposited to Richard C. Sutton.

An announcement or advertisement that certain property will be sold at auction does not prevent the seller from calling off the auction and in no way obligates the seller to sell. This point of law is so well settled it seems unnecessary to cite many of the numerous authorities to that effect.

Advertisement is not an offer to sell but is a mere declaration of intention to hold an auction at which bids will be received. A bid is an offer to purchase and until accepted no contract relation exists. See note L. R. A. 1917A, page 74.

The following statement is made in Restatement of the Law of Contracts, section 27, page 34:

"*Auctions; Sales without Reserve.* At an auction, the auctioneer merely invites offers from successive bidders which he may accept or reject unless, by announcing that the sale is without reserve or by other means, he indicates that he is making an offer to sell at any price bid by the highest bidder. In that case after a bid has been made the auctioneer cannot withdraw. * * *

"*Comment:*

"(a) * * * The auctioneer, by beginning to auction property, does not impliedly say: 'I offer to sell this property to whichever one of you makes the highest bid,' but rather requests that the bidders make offers to him, as indeed he frequently states in his remarks to those before him."

The settled rules as to bidding at auction sales generally are applicable to public judicial sales. The following statement is made in 30A American Jurisprudence, *Judicial Sales,* section 91, page 955:

"A bid at a judicial sale is a mere offer, which must be accepted in order to constitute a binding contract. Thus, a bid at a judicial sale is merely an offer to purchase and remains so until it is accepted and confirmed by the court."

To the same effect see 50 Corpus Juris Secundum, *Judicial Sales,* section 22b, page 606.

The provision for an upset price in a notice of an auction sale does not change the nature of such an advertisement. An upset price is merely the opinion of the court as to the fair market value of the property, and the court in effect says when it fixes an upset price that any bid which does not equal or exceed that amount will

be deemed substantially inadequate. (*Kremer* v. *Rule*, 216 Wis. 331, 257 N. W. 166, 169; Restatement of the Law on Contracts, § 27; *United States ex. rel. Golberg* v. *Meyer*, 37 App. D. C. 282 [1911].)

As in the case of any auction of property where the sale is a judicial one, it is within the discretion of the officer of the court conducting such sale to withdraw the property from sale even after the bidding has begun and the prospective bidders have no right because of such action. "The highest and best bidder in such case acquires no right to compel a conveyance of the property to him, because until the property is knocked off there is no acceptance of his offer, and no contract." (30A Am. Jur., *Judicial Sales,* § 96, pp. 956-957; see also 50 C. J. S., *Judicial Sales,* § 18, p. 602.)

It is clear that the purported bid of the movant-appellant was never accepted, that there was no one present to conduct the auction or accept bids, that the auction was not held and, consequently, there is no contract right to enforce by the movant-appellant. (*McDonald* v. *Green,* 5 Haw. 325.)

From the evidence we may well conclude that after the guardians ascertained that there would be competition for these parcels of land, they decided not to sell. We may even go further and say that they were derelict in their duty in attempting to stifle competitive bidding, obviously desiring the sale to be made to one of the part-owners who was interested in purchasing. There is, of course, nothing illegal or unethical in a part-owner wishing to obtain other interests, but the guardians may be justly criticized for attempting to permit a purchase without competition. However, while this may be a dereliction of duty on the part of the guardians, it gives an intending bidder no rights whatever against the intended sellers, not even for damages.

See *Anderson* v. *Wisconsin Cent. Ry Co.,* 107 Minn. 296, 120 N. W. 39, 46, where the court made an analogy between a merchant advertising certain bargain sales and an advertisement of an auction sale, stating:

"* * * A merchant advertises that on a certain day he will sell his goods at bargain prices; but no one imagines that the

prospective purchaser, who visits the store and is denied the right to purchase, has an action for damages against the merchant. He merely offers to purchase, and if his offer is refused, he has no remedy, although he may· have lost a bargain, and have incurred expense and lost time in visiting the store. The analogy between such a transaction and an auction is at least close. As the advertisement in this case was a mere statement of intention to offer the property for sale at public auction to the highest bidder, the respondent's bid did not complete either a contract of sale or a contract to make a sale."

See *Harris* v. *Nickerson*, L. R. 8 Q. B. 286 (1873).

The contention that there is an estoppel against the guardians which gives the bidder the right to purchase is without any merit. The Hawaiian case cited, *Peabody* v. *Damon,* 16 Haw. 447, is one where an individual who stands by and sees property sold as belonging to certain heirs and does nothing, is estopped later to come in and claim the property. This of course bears no resemblance to the present situation. Nor does the statement from the text that where a sale is postponed the postponement must be advertised give the claimant any rights whatever. Such provision is for the protection of the ward so that there will not be a sale without competitive bidding, and only the ward has the benefit of such requirement and may question the legality of the subsequent sale made without published notice of such postponement.

Even had the property been knocked down to a claimant after an auction (and there was no auction and the property was not knocked down in the case at bar), the claimant would not have any enforceable right unless such auction be confirmed by the court. See Revised Laws of Hawaii 1955, section 338-50, and *Vasconcellos* v. *Vasconcellos, Clifford Oh, Intervenor,* 39 Haw. 653.

This court is in no position to require the court below to confirm this purported sale as the property may well be worth much more than the upset price or the amount bid for it by appellant.

Since the appeal was docketed in this court the incompetent has died and the Hawaiian Trust Company, Limited, A. F. Mahn and

Edward C. Hustace, Administrators of the Estate of Victoria Kathleen Ward, Deceased, have been substituted as respondents-appellees in place of the guardians, Chinn Ho, George H. Vicars, Jr., and Mark Norman Olds, by order of this court.

Affirmed.

*Richard C. Sutton* (*E. W. Sutton* with him on opening brief; alone on reply brief) for himself, appellant.

*Dwight M. Rush* (*Henshaw, Conroy & Hamilton* and *Frank D. Gibson, Jr.,* on the brief) for appellees.