47 P.3d 1222

**Mary ZANAKIS–PICO and Thomas M. Pico, Jr., Plaintiffs–Appellants/Cross–Appellees,**

v.

**CUTTER DODGE, INC. d/b/a Cutter Dodge Chrysler Plymouth Jeep Eagle, Defendant–Appellee/Cross–Appellant,**

and

**Doe Entities 1–10, Defendants.**

No. 22987.

Supreme Court of Hawai'i.

June 14, 2002.

As Amended July 26, 2002.

Thomas M. Pico, Jr., Honolulu, on the briefs, for Plaintiffs–Appellants/Cross–Appellees Mary Zanakis–Pico and Thomas M. Pico, Jr.

Roy F. Hughes & James Shin (of Hughes & Taosaka), Honolulu, on the briefs, for Defendant–Appellee/Cross–Appellant Cutter Dodge, Inc., d/b/a Cutter Dodge Chrysler Plymouth Jeep Eagle.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.; with ACOBA, J., also concurring separately.

Opinion of the Court By LEVINSON, J.

The plaintiffs-appellants/cross-appellees, Mary Zanakis–Pico and Thomas M. Pico (the Picos) appeal from the amended judgment of the first circuit court, the Honorable Gary W.B. Chang presiding, filed on November 4, 1999. The Picos argue that the circuit court erred in: (1) partially granting the motion of the defendant-appellee/cross-appellant Cutter Dodge, Inc., d/b/a Cutter Dodge Chrysler Plymouth Jeep Eagle (Cutter), for partial summary judgment as to damages, based on its conclusion that the Picos were not entitled to "benefit-of-the-bargain" damages in connection with their claim pursuant to Hawai'i Revised Statutes (HRS) chapter 480 (1993 & Supp.2000);[1] (2) partially granting Cutter's

1. HRS chapter 480 provides in relevant part that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." HRS § 480–2.

motion for dismissal, or, in the alternative, for summary judgment, based on its conclusion that the Picos had failed to establish cognizable damages under HRS chapter 480;[2] and (3) granting Cutter's motion in limine for dismissal or, in the alternative, for directed verdict, concluding that Cutter was entitled to judgment as a matter of law regarding all of the Picos' remaining claims as set forth in their third amended complaint and subsequent more definite statement of claims—specifically, their contract and, liberally construing their opening brief on appeal, their common law claims grounded in either negligence or negligent misrepresentation, false advertising, and fraud.[3]

Cutter cross-appeals, urging that the circuit court erred in: (1) partially denying its motion for partial summary judgment as to damages by failing to dismiss the Picos' claim for punitive damages; (2) partially denying Cutter's motion to dismiss the Picos' third amended complaint or, in the alternative, for summary judgment, by failing to dismiss the Picos' third amended complaint in its entirety; and (3) partially denying Cutter's request for attorneys' fees, costs, and sanctions, by failing to enter an award pursuant to HRS §§ 481A–4 (1993)[4] and 607–14.5 (1993)[5] and

Hawai'i Rules of Civil Procedure (HRCP) Rule 11 (1990).[6]

We hold that the circuit court erred in concluding that the Picos failed to allege cognizable damages with respect to their statutory claim under HRS chapter 480, their common law claim for relief grounded in fraud, and any other cognizable common law tort claims that the Picos sufficiently pled. We further hold that the circuit court correctly ruled that Cutter was entitled to judgment as a matter of law with respect to the Picos' contract claim. Finally, on the record before us, we hold that the circuit court did not err in denying Cutter's motion for attorneys' fees, costs, and sanctions. Accordingly, we vacate the circuit court's amended judgment and remand this case for further proceedings consistent with this opinion.

## I. BACKGROUND

This dispute involves an advertisement by Cutter appearing in the September 12, 1997 editions of both of the Honolulu daily newspapers of general circulation—the Advertiser and the Star–Bulletin. In large print at the top, the advertisement announced a "$13,000,000 INVENTORY REDUCTION" and claimed, "We're #1 For a Reason! Volume = Low Prices[.] Come on Down

---

**2.** *See supra* note 1.

**3.** The Picos do not argue on appeal that the circuit court erred in finding that Cutter was entitled to judgment as a matter of law regarding their tort claims of "outrage" or "concealment," whatever those might be.

**4.** HRS § 481A–4(b) provides in relevant part that "[c]osts shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if . . . the party complaining of a deceptive trade practice has brought an action which the party knew to be groundless. . . ."

**5.** HRS § 607–14.5(a) provides in relevant part:

[i]n any civil action in this State where a party seeks money damages or injunctive relief, . . . the court may, as it deems just, assess against either party . . . a reasonable sum for attorneys' fees in an amount to be determined by the court upon a specific finding that the party's claim or defense was frivolous.

HRS § 607–14.5(b) mandates that a court awarding attorneys' fees "must find in writing that all claims or defenses made by the party are

frivolous and are not reasonably supported by the facts and the law in the civil action."

**6.** In 1999, HRCP Rule 11 provided in relevant part that signed pleadings, motions, and other papers constitute a certificate by the signatory that:

to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Effective January 1, 2000, the rule was substantially amended.

and find out why!! $0 Cash Down!*" (out-line and bold print in original). At the bottom were five lines of text, including two asterisks, in a much smaller type-face. The first asterisk was followed by the qualification: "$0 Cash Down on all Gold Key Plus pymnt. vehicles."

The main body of the advertisement, between the introductory text and the fine print, included pictorial depictions of and specific terms for fourteen different model vehicles. In each instance, the advertisement stated the number of vehicles of the particular model available at the stated terms or price and listed what appear to be their inventory identification numbers. Five of the models were listed with a cash price, while nine were simply advertised for "$0 Cash Down," subject to varying monthly payments over various periods of time.[7]

The first and most prominently displayed vehicle was a "NEW '97 **GRAND CHERO-KEE LAREDO**," priced at "**$229 Month\* 24 Mos. $0 Cash Down or $20,988.**" A second asterisk in the fine print at the bottom of the advertisement read: "Rebate and APR on select models, not combinable, prices incl. $400 Recent College Grad, $750 $1000 Loyalty Rebate on Grand Cherokees & Loyalty Rebate on Caravans & Grand Caravans on pymnts & prices & all other applicable rebates. On approved credit. All pymnts/ prices plus tax, lic. & $195 doc fee."

On October 16, 1997, the Picos filed a complaint in the first circuit court, based on the advertisement, and amended it several times thereafter. In their third amended complaint, the Picos alleged that they had traveled to Cutter's Pearl City lot in response to the advertisement. One of the advertised Jeep Grand Cherokee Laredos was still available, and the Picos test drove the vehicle. Finding it to their liking, the Picos advised Cutter's sales agent that they were ready, willing, and able to purchase the vehicle, whereupon the sales agent informed them that they would have to make a down payment of $1,400.00. The Picos protested, pointing out that, according to Cutter's advertisement, the vehicle could be purchased for no cash down and two hundred twenty-nine dollars per month, but the sales agent explained that the "$0 cash down/$229 per month" offer was only available to recent college graduates who were entitled to a "loyalty rebate." The Picos left the premises shortly thereafter without purchasing the vehicle.

The Picos' third amended complaint alleged that Cutter had violated numerous statutory provisions, including: (1) HRS § 708–871 (1993) ("false advertising");[8] (2) HRS § 480–2(a) (1993) ("unfair or deceptive acts or practices");[9] (3) HRS § 481A–3(a)(9), (11), and (12) (1993) ("Deceptive trade practices");[10] and (4) HRS § 437–4(b) (Supp. 1996) ("False, deceptive, or misleading advertising").[11] In addition, the Picos claimed

---

7. Four of the models with a cash price could also be had for "$0 Cash down" and a monthly payment plan.

8. HRS § 708–871 provides in relevant part:

(1) A person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons.

(2) "Misleading statement" includes an offer to sell property or services if the offeror does not intend to sell or provide the advertised property or services:

(a) [a]t the price equal to or lower than the price offered....

. . . .

(3) False advertising is a misdemeanor.

9. *See supra* note 1.

10. HRS § 481A–3(a) provides in relevant part:

A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person:

. . . .

(9) Advertises goods or services with intent not to sell them as advertised;

. . . .

(11) Makes false or misleading statements of fact concerning the reason for, existence of, or amounts of price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

11. HRS § 437–4(b)(2) provides that "[a]ny advertised product must be available on the stated

generally that the advertisement was "misleading, deceptive[,] and false[,] in that a consumer reading this advertisement would be led to believe, as PLAINTIFFS were, . . . that a new 1997 Jeep Grand Cherokee Laredo could be purchased for $229 per month, for 24 months with $0 Cash Down or, alternatively, for a total sum of $20,988." The Picos prayed for general, special, and punitive damages, as well as for specific performance (*i.e.*, the sale of the vehicle to them as advertised) and injunctive relief prohibiting Cutter from further false, deceptive, or misleading advertising. Finally, the Picos prayed that the circuit court order the Motor Vehicle Industry Licensing Board to suspend or revoke Cutter's motor vehicle dealer license and levy a fine as authorized by statute.

Cutter answered the Picos' complaint by denying, *inter alia*, that the advertisement was false or misleading. After approximately eight months of discovery, Cutter filed a motion for partial summary judgment as to damages. On November 18, 1998, the circuit court, the Honorable Kevin S.C. Chang presiding, granted Cutter's motion in part and denied it in part. The circuit court ruled as a matter of law that the Picos were not entitled to damages for emotional distress or "benefit-of-the-bargain" in connection with their HRS § 480-2 claim, but denied Cutter's motion without prejudice with respect to other damages.

Subsequently, Cutter filed a motion to dismiss the Picos' third amended complaint or, in the alternative, for summary judgment. On February 12, 1999, the circuit court, the Honorable Gail C. Nakatani presiding, granted Cutter's motion with respect to the Picos' statutory claims, based on the following: (1) the Picos, as a matter of law, had failed to establish damages cognizable under HRS chapter 480; (2) the Picos' third amended complaint set forth no allegations supporting any claim for future damages, as required by

HRS § 481A-4; and (3) as a matter of law, private citizens lack standing to assert claims pursuant to HRS §§ 437-4(b) or 708-871. The circuit court elaborated as follows on its reasons for dismissing the HRS chapter 480 claim during the hearing on Cutter's motion: "[A]s a matter of law . . . the cost of travel is not an item of damages contemplated under Chapter 480, and . . . the kind of damages really contemplated under Chapter 480 is . . . to prevent unjust enrichment, and the cost of travel is not that kind of damages." The circuit court denied Cutter's motion, however, to the extent that it sought a complete dismissal of the Picos' third amended complaint. Instead, the circuit court ordered the Picos to file a more definite statement regarding such claims for relief as remained in their third amended complaint.[12]

The Picos filed their more definite statement of claims on January 26, 1999. They realleged their HRS chapter 480 claim and asserted that their third amended complaint also set forth: (1) the common law torts of false advertising, fraud, deceit, concealment, misrepresentation, negligence, gross negligence, and outrage, which allegedly gave rise to general, special, and punitive damages; and (2) a claim of breach of contract. They clarified that they were seeking nominal general damages, punitive damages, specific performance, and injunctive relief. In response, Cutter filed a motion to dismiss the Picos' third amended complaint or, in the alternative, for a directed verdict. On April 1, 1999, the circuit court, the Honorable Steven M. Nakashima presiding, treated Cutter's motion as a motion for summary judgment and granted it, ruling that there were no genuine issues of material fact and that Cutter was entitled to judgment as a matter of law on all of the Picos' claims.[13]

Finally, on May 19, 1999, the circuit court, the Honorable Gail C. Nakatani presiding, granted Cutter's request for costs, pursuant to HRS § 607-9 (1993),[14] in the amount of

---

terms from inventory, or by order with delivery within a reasonable period of time."

12. The Picos took exception to the directive to file a more definite statement, arguing that Cutter's answer to their third amended complaint rendered a more definite statement untimely.

13. Additional findings of fact and conclusions of law entered by the circuit court during the hearing on the motion are noted *infra* in section III.

14. HRS § 607-9 provides in relevant part:

All actual disbursements, including but not limited to intrastate travel expenses for wit-

$3,781.25, but denied Cutter's request for attorney's fees and costs, pursuant to HRS § 607-14.5, *see supra* note 5, and sanctions, pursuant to HRCP Rule 11, *see supra* note 6.

## II. *STANDARDS OF REVIEW*

### A. *Motion for Summary Judgment*

We review the circuit court's grant or denial of summary judgment *de novo. Hawai'i Community Federal Credit Union v. Keka,* 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is well settled:

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Id.* (citations and internal quotation marks omitted).

### B. *Statutory Interpretation*

■ We review the circuit court's interpretation of a statute *de novo. State v. Pacheco,* 96 Hawai'i 83, 94, 26 P.3d 572, 583 (2001). Our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1-15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

> ... This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1 15(2) (1993).

*Id.* at 94-95, 26 P.3d at 583-84 (some citations and internal quotation marks added and some in original) (brackets in original).

### C. *Attorneys' Fees And Costs*

■ We review the circuit court's denial of attorneys' fees and costs for abuse of discretion. *Fujimoto v. Au,* 95 Hawai'i 116, 137, 19 P.3d 699, 720 (2001) (citing *Eastman v. McGowan,* 86 Hawai'i 21, 27, 946 P.2d 1317, 1323 (1997) (quoting *Weinberg v. Mauch,* 78 Hawai'i 40, 52-53, 890 P.2d 277, 289-90, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995))). "'An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant.'" *Fujimoto,* 95 Hawai'i at 137, 19 P.3d at 720 (quoting *State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (citations and internal quotation signals omitted)).

## III. *DISCUSSION*

### A. *Pursuant to HRS Chapter 480, Consumers Who Do Not Actually Purchase Goods Or Services May Recover Statutorily Prescribed Damages.*

■ The circuit court concluded, as a matter of law, that the Picos had failed to "estab-

nesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party,

and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

lish damages required under [HRS c]hapter 480" and, thus, had failed to state a claim under the statute for which relief could be granted. The court's conclusion was premised on the fact that the Picos had not actually purchased the advertised vehicle or otherwise given any value to Cutter. Thus, the circuit court concluded that the kind of damages contemplated by HRS chapter 480 were "to prevent unjust enrichment, and the cost of travel is not that kind of damages." In that regard, the circuit court erred.

It appears that this court has never specifically addressed the parameters of cognizable damages under HRS chapter 480; in particular the Hawai'i appellate courts have not considered whether damages are recoverable under the statute absent an actual purchase of goods or services. *But see Wiginton v. Pacific Credit Corp.*, 2 Haw.App. 435, 444, 634 P.2d 111, 118 (1981) (holding that, under HRS chapter 480, a plaintiff wrongfully induced to make a payment could recover associated costs—including a money order fee, gasoline, parking, and general wear and tear on his automobile—in addition to the payment itself). Following our well—settled approach to statutory interpretation, we look first to the plain language of the statute.

HRS § 480–13(b) (1993)[15] provided in relevant part:

> Any consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480–2:
>
> (1) May sue for damages sustained by the consumer, and, if the judgment is for the plaintiff, the plaintiff shall be awarded a sum not less than $1,000 or threefold damages by the plaintiff sustained, whichever sum is the greater, and reasonable attorneys fees together with the costs of suit; and
>
> (2) May bring proceedings to enjoin the unlawful practices, and if the decree

is for the plaintiff, the plaintiff shall be awarded reasonable attorneys' fees together with the cost of suit.

HRS chapter 480 defines neither "injury" nor "damages," but it does define the term "consumer" in relevant part to mean "a natural person who, primarily for personal, family, or household purposes, purchases, *attempts to purchase, or is solicited to purchase* goods or services[.]" HRS § 480–1 (1993) (emphasis added).

■ Thus, the plain language of the statute reflects that the legislature intended not only to protect persons who actually purchased goods or services as a result of unfair or deceptive acts and practices, but also those who attempted or were solicited to do so. It would be most strange if the legislature had sought to protect such persons but failed to provide them with any remedy. Indeed, HRS § 480–13(b) does not qualify or limit the term "consumer" in any way. We therefore construe the term "consumer" as it appears in HRS § 480–13(b) consistently with its definition in HRS § 480–1. Reading HRS § 480–13 only to permit recovery of damages for injuries sustained by means of actual purchases would generate an absurd result.[16] "[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *Beneficial Hawai'i, Inc. v. Kida*, 96 Hawai'i 289, 309, 30 P.3d 895, 914–15 (2001) (citations and internal quotation marks omitted). *See also* HRS § 1–15(3) (1993) ("Every construction which leads to an absurdity shall be rejected."). Accordingly, by the plain language of the entire statute, no actual purchase is necessary as a prerequisite to a consumer recovering damages under HRS § 480–13, based on injuries stemming from violations of HRS § 480–2.

But even assuming statutory ambiguity, the legislative history underlying HRS chap-

**15.** Effective July 15, 1998, HRS § 480–13(b)(1) was both substantively and stylistically amended in respects not directly material to our analysis in this case, *see infra* note 16. *See* 1998 Haw. Sess. L. Act 179, § 2 at 668–69.

**16.** This is readily apparent by inserting the definition of "consumer," as set forth in HRS § 480–

1, and the definition of damages that Cutter urges into HRS § 480–13(b). The statute would then read: "Any [person who *attempts* to purchase goods or services] who is injured by any unfair or deceptive act or practice ... may sue for damages [resulting from their *actual* purchase of goods or services]." (Emphases added.)

ter 480 is in accord with the foregoing interpretation. Cutter argued below, based on legislative committee reports addressing the 1969 amendment to HRS § 480–13 that insured persons injured by violations of the chapter a recovery of not less than $1,000.00, that the legislature intended that only consumers who actually purchased goods or services would be entitled to recover under the statute. Specifically, Cutter cites the legislature's expressed concern that consumers who purchase low-priced items would be unlikely to pursue relief absent the $1,000.00 assured minimum recovery. *See* Sen. Stand. Comm. Rep. No. 600, in 1969 Senate Journal, at 1111.

Cutter reads the legislative history too narrowly. The $1,000.00 assured minimum recovery manifests a legislative intent to do more than simply prevent unjust enrichment at the expense of consumers who purchased relatively inexpensive goods. As both the legislative houses declared at the time the $1,000.00 assured minimum recovery was added to HRS § 480–13, HRS chapter 480's paramount purpose was to "encourage those who have been victimized by persons engaging in unfair or deceptive acts or practices to prosecute their claim," thereby affording "an additional deterrent to those who would practice unfair and deceptive business acts." Sen. Stand. Comm. Rep. No. 600, in 1969 Senate Journal, at 1111; Hse. Stand. Comm. Rep. No. 661, in 1969 House Journal, at 882–883. Thus, the legislature sought to protect *all* "consumers" adversely affected by unfair

or deceptive acts or practices; it therefore follows that the $1,000.00 assured minimum recovery was intended to be available to all consumers who could demonstrate damages. Nothing in the history suggests that the legislature intended the anomalous result that a consumer who spent ninety-nine cents on an overpriced soda could potentially recover $1,000.00, but a consumer who expended far more time and money pursuing an illusory bargain could recover nothing.

■ The foregoing statutory construction is consistent with HRS chapter 480's function as a mechanism for abating practices that potentially injure consumers in general. *See Ai v. Frank Huff Agency, Ltd.*, 61 Haw. 607, 616, 607 P.2d 1304, 1311 (1980) (noting that HRS § 480–2 "was constructed in broad language in order to constitute a flexible tool to stop and prevent fraudulent, unfair or deceptive business practices for the protection of both consumers and honest businessmen"), *overruled on other grounds by Robert's Hawai'i School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 982 P.2d 853 (1999); *Kukui Nuts of Hawai'i v. R. Baird & Co., Inc.*, 7 Haw.App. 598, 610, 789 P.2d 501, 510 (1990); *Beerman v. Toro Manufacturing Corp.*, 1 Haw.App. 111, 117, 615 P.2d 749, 754 (1980). False or misleading advertisements do their damage when they induce action that a consumer would not otherwise have undertaken. If a consumer can establish a resulting injury, HRS § 480–13(b)(1) entitles him or her to the greater of $1,000.00 or treble damages.[17] The statute's

---

17. As indicated *supra* in note 14, the legislature amended HRS § 480–13(b), effective July 15, 1998. 1998 Haw. Sess. L. Act 179, § 2 at 668–69. Act 179, *inter alia*, added the following proviso to HRS § 480–13(b)(1):

> provided that where the plaintiff is an elder, the plaintiff, in the alternative, may be awarded a sum not less than $5,000 or threefold any damages sustained by the plaintiff, whichever sum is the greater.... In determining whether to adopt the $5,000 alternative amount in an award to an elder, the court shall consider the factors set forth in section 480 13.5[.]

HRS § 480–13(b)(1) (Supp.2000). HRS § 480–13.5 (Supp.2000), which Act 179 also created, *see* 1998 Haw. Sess. L. Act 179, § 1 at 668, provides:

> **Additional civil penalties for consumer frauds committed against elders.** (a) If a person commits a violation under section 480–2 which is directed toward, targets, or injures an

elder, a court, in addition to any other civil penalty, may impose a civil penalty not to exceed $10,000 for each violation.

> (b) In determining the amount, if any, of civil penalty under subsection (a), the court shall consider the following:
> (1) Whether the person's conduct was in wilful disregard of the rights of the elder;
> (2) Whether the person knew or should have known that the person's conduct was directed toward or targeted an elder;
> (3) Whether the elder was more vulnerable to the person's conduct than other consumers because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability;
> (4) The extent of injury, loss, or damage suffered by the elder; and
> (5) Any other factors the court deems appropriate.

damages scheme is consistent with both its plain language and its legislative purpose.

The foregoing statutory construction is likewise consistent with relevant federal and state case law. A false or misleading advertisement has been held to violate the Federal Trade Commission Act regardless of whether a consumer actually purchases any goods or services as a result of the deception.[18] *See Federal Trade Comm'n v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir.1993) (predicating defendant's liability not on the fact that defendant sold heat detectors, but on the dishonest or fraudulent practices it employed to sell them); *Resort Car Rental Sys., Inc. v. Federal Trade Comm'n*, 518 F.2d 962, 964 (9th Cir.1975) (holding that the Federal Trade Comm'n Act is violated if "it induces the first contact through deception, even if the buyer later becomes fully informed before entering the contract"); *Spiegel, Inc. v. Federal Trade Comm'n*, 494 F.2d 59, 62 (7th Cir.1974) (holding that, while "[p]rotection of the public is essential to justify filing a Section 5 complaint[,] ... proof of actual injury is unnecessary to support a Commission cease and desist order"). Most of the state jurisdictions that have addressed the question whether an actual purchase is required, within the context of similar consumer fraud statutes, in order to state a claim upon which relief can be granted, seem to be in agreement with the federal approach. *See, e.g., McCormick Piano & Organ Co. v. Geiger*, 412 N.E.2d 842 (Ind.Ct. App.1980) ("to say that a sale must actually take place would circumvent the intent of the Legislature which took great pains to include acts of deceptive solicitation as prohibited conduct"); *Truex v. Ocean Dodge, Inc.*, 219 N.J.Super. 44, 529 A.2d 1017, 1020 (1987) (holding that plaintiff could recover damages for any " 'ascertainable loss of moneys or property,' together with counsel fees, filing fees and reasonable costs, even if no contract was executed between the parties," under circumstances in which consumer-plaintiff had made no purchase but had given defendant a thirty dollar deposit (citations omitted)); *Beslity v. Manhattan Honda*, 120 Misc.2d 848, 467 N.Y.S.2d 471 (N.Y.App. Term.1983) (holding that plaintiff was entitled to the fifty dollar statutory minimum damages for traveling to car dealer's showroom based on false advertisement, but denying him extra $250.00 paid after being apprised of the "real deal"); *Weaver v. J.C. Penney Co.*, 53 Ohio App.2d 165, 372 N.E.2d 633, 635–36 (1977) (holding that no sale need actually take place in order for a plaintiff to recover the one hundred dollar statutory minimum); *Brashears v. Sight 'N Sound Appliance Centers, Inc.*, 981 P.2d 1270 (Okla.Ct. App.1999) (holding that plaintiffs' loss of time, inconvenience, travel and telephone expenses were legally cognizable damages under the Oklahoma Consumer Protection Act, despite the fact that plaintiff never actually purchased anything from defendants); *but see Ceshker v. Bankers Commercial Life Insurance Company*, 558 S.W.2d 102 (Tex.Civ. App.1977) (holding that "[a] consumer may not bring an action based on an alleged misrepresentation of an insurance policy which he never bought" under the Tex. Bus. & Comm.Code).

Deception being the evil that consumer fraud statutes seek to rectify, regardless of whether actual purchases have resulted,

---

(c) As used in this chapter, "elder" means a consumer who is sixty-two years of age or older.

Although HRS § 480–13.5 does not govern this case, we note that there is no evidence in the record that either of the Picos was an "elder" during the relevant period.

**18.** HRS § 480–2(b) directs that, "[i]n construing this section, the courts and the offices of consumer protection shall give due consideration to the rules, regulations, and decisions of the Federal Trade Commission and the federal courts interpreting section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended."

Of course, the Federal Trade Commission Act, unlike HRS § 480–2, is enforced exclusively by a government agency, so the comparison, for the purposes of damages, is of limited utility and not expressly mandated by the statute. What is relevant for our purposes, however, is that "the factual predicate for the cause of action rests in deception of the public." *Federal Trade Comm'n v. Brown and Williamson*, 778 F.2d 35, 40 n. 2. (D.C.Cir.1985) (comparing the Federal Trade Commission Act and the Lanham Act, which are the two federal statutes addressing false advertising).

there is no discernible reason why a consumer should be required to actually purchase any goods or services as a precondition to bringing an action, *inter alia,* for damages that result from injuries caused by false or misleading advertisements. We therefore hold that a consumer who is injured as a result of attempting to purchase goods or services by virtue of an act or practice prohibited by HRS § 480–2 may recover damages under HRS § 480–13. No actual purchase is necessary. Accordingly, if Cutter's advertisement violated HRS § 480–2,[19] the Picos have stated a claim for damages for which relief can be granted pursuant to HRS § 480–13(b)(1). *Cf. Wiginton,* 2 Haw.App. at 444, 634 P.2d at 118 (holding that consumer-plaintiff's damages included out-of-pocket expenses for a money order, gasoline, parking, and wear and tear on automobile that resulted from unfair business practice). In addition, by the plain language of HRS § 480–13(b)(2), the Picos may seek to enjoin the future use of such advertisements.

■ The Picos may not, however, recover "benefit-of-the-bargain" damages, which are preconditioned on the breach of a contract. *See Hawaiian Holiday Macadamia Nut Co., Inc. v. Industrial Indem. Co.,* 76 Hawai'i 166, 171, 872 P.2d 230, 235 (1994); *Burgess v. Arita,* 5 Haw.App. 581, 591, 704 P.2d 930, 938 (1985). Such contract damages, generally speaking, are available under HRS chapter 480. *See Leibert v. Finance Factors, Ltd.,* 71 Haw. 285, 788 P.2d 833 (1990). But, for the reasons discussed *infra* in section III.D, we hold that the circuit court correctly concluded that there was no contract in the present matter. Similarly, assuming *arguendo* that specific performance is a remedy available under HRS chapter 480, the circuit court did not err in denying the Picos' request for specific performance. *See Schrader v. Benton,* 2 Haw.App. 564, 566, 635 P.2d 562, 564 (1981) (failure to prove the existence of a contract precludes specific performance).

■ Moreover, the Picos may not recover damages for emotional distress. *See Ailetch-*

er v. Beneficial Fin. Co. of Hawai'i, 2 Haw. App. 301, 307, 632 P.2d 1071, 1076 (1981) ("under [HRS] §§ 480–2 and 480–13, ... there is no room for damages for personal injury and hence[ ] there can be no recovery ... for mental pain and suffering"); *Beerman v. Toro Mfg. Corp.,* 1 Haw.App. 111, 117, 615 P.2d 749, 754 (1980) (barring recovery of damages for personal injury under HRS chapter 480). HRS chapter 480 was not designed as a vehicle for personal injury actions, with respect to which the law already provides adequate remedies. Rather, the legislature has sought to regulate the conduct of trade and commerce by preventing unfair and deceptive acts and practices that are injurious to other businesses and consumer-participants in the marketplace. *See Beerman,* 1 Haw.App. at 118, 615 P.2d at 754.

■ Finally, the Picos are precluded from seeking punitive damages under HRS chapter 480. HRS § 480–13(b) enumerates the specific damages that a consumer may recover under the chapter—the greater of $1,000.00 or treble damages—and makes no provision for punitive damages. *See also Leibert,* 71 Haw. 285, 788 P.2d 833 (holding that the maximum damage award under HRS chapter 480 is treble compensatory damages); *Han v. Yang,* 84 Hawai'i 162, 931 P.2d 604 (App.1997) (citing *Leibert* ).

B. *The Circuit Court Erred In Concluding That Cutter Was Entitled To Judgment As A Matter Of Law With Respect To The Picos' Tort Claims On The Basis That The Picos Failed To Allege "Substantial Pecuniary Loss."*

■ The Picos assert that the circuit court erred in ruling that Cutter was entitled to judgment as a matter of law with respect to their tort claims, in which they alleged that Cutter breached "its duty to advertise truthfully." Specifically, liberally construing their opening brief, the Picos seem to argue that the circuit court erred in entering judgment in favor of Cutter with respect to their

---

19. Because the circuit court did not reach the question whether Cutter's advertisement in fact violated HRS § 480–2, we do not reach it either.

claims for relief sounding in negligence or negligent misrepresentation, fraud, and false advertising. It appears that the circuit court construed the Picos' negligence claim as a claim of negligent misrepresentation[20] and concluded that a claim for relief premised on either negligent misrepresentation or fraud required a showing of "substantial pecuniary loss." The circuit court therefore granted summary judgment in Cutter's favor and against the Picos with respect to the Picos' negligent misrepresentation and fraud claims on the basis that three to five dollars, which the Picos allegedly spent on gasoline in reliance on Cutter's advertisement, was not "substantial" enough to constitute "substantial pecuniary loss." The circuit court does not appear to have specifically addressed any claim for relief based on "false advertising."[21]

 This court has held that in order to maintain a claim for relief grounded in fraud or deceit,

> the plaintiff must have suffered *substantial actual damage, not nominal or speculative*. Prosser, *Law of Torts* at 648 (3d ed. 1964). The courts have often expressed this requirement in terms of pecuniary damage, ... as does the *Restatement of Torts* § 519 (1938). The aim of compensation in deceit cases is to put the plaintiff in the position he [or she] would have been had he [or she] not been defrauded.... There may be no recovery for mental anguish and humiliation not intentionally inflicted....
>
> *Pecuniary damages*, being narrow in scope, *are those damages (either general or special) which can be accurately calculated in monetary terms* such as loss of wages and cost of medical expenses. In fraud or deceit cases, the measure of pecuniary damages is usually confined to either the 'out-of-pocket' loss ... or the 'benefit of the bargain'....

*Ellis v. Crockett*, 51 Haw. 45, 52–53, 451 P.2d 814, 820 (1969) (some citations and footnote omitted) (emphases added); *see also Hawai'i's Thousand Friends v. Anderson*, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989) ("plaintiff must show that he [or she] suffered substantial pecuniary damage"). Thus, as the juxtaposition of "substantial actual damage" with "nominal" or "speculative" damages indicates, plaintiffs suing in fraud are required to show both that they suffered actual pecuniary loss and that such damages are definite and ascertainable, rather than speculative. There is no threshold amount

---

20. This is suggested by the following colloquy during the February 24, 1999 hearing on Cutter' motion in limine, which the circuit court construed as a motion for summary judgment:

> [Cutter]: And on that basis I ask that the Court dismiss their fraud claims for failing to show substantial pecuniary loss as well as misrepresentation claims.
> The Court: So as far as any negligence or fraud, those would be the negligence and fraud claims?
> [Cutter]: Yes.
> The Court: There's no other—I don't think I saw any other negligence claim. I mean it's negligent misrepresentation, the fraud or deceit which—and the contract claims."

When the circuit court asked the Picos to address the "negligent misrepresentation question," the Picos arguably abandoned any claims sounding in negligence of any kind by responding:

> [The Picos]: I don't think this was negligent. I didn't allege negligence—
> The Court: Okay.
> [The Picos]:—to put it in our more definite statement only because Mr. Cutter in his deposition gave a basis basically for defense that they were negligent rather than intentional conduct on their part....

So, you know, Mr. Cutter kind of brings that defense in his case saying, well, we didn't do this intentionally to defraud people. Maybe my guy who writes the ad doesn't know any better. Okay. If that's their defense, then that's negligent misrepresentation on their part rather than intentional. I don't think it's going to fly. I think it's totally bogus.

And, you know, I'm perfectly happy to not make that claim because I would just as soon go to the jury and ask the jury is this intentional or not? Is this wilful or not? Is this a conscious disregard of the rights of the people who are reading this ad or not? And if it is not, if it's negligent, they appear negligent on their part, oh, my goodness, we didn't realize recent college graduates who owned Jeeps are the only ones who qualify here for this ad. Okay. Fine. Then I'll let Mr. Cutter off the hook and I'll let Cuter Dodge off the hook.

And I don't think that's the case. I think that's bogus.

21. There is no tort of "false advertising" under Hawai'i law, and we decline to establish one in this appeal.

required in order for the pecuniary loss to be deemed "substantial." *Cf. Turner v. General Adjustment Bureau, Inc.*, 832 P.2d 62, 63 n. 1 (Utah Ct.App.1992) (rejecting argument that damages must be "substantial" in order to be recoverable for fraud), *overruled on other grounds by Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, —— P.3d ——, 2001 WL 1246676 (2001) (holding that damages for emotional distress are recoverable for fraud).

Cutter urges us, nevertheless, to affirm the circuit court because "[t]he only damages recoverable under a fraud claim are confined to either 'out of pocket' or 'benefit of the bargain' damages." This court has never specifically addressed whether the kind of damages alleged by the Picos constitute "out-of-pocket" losses and are sufficient to support a claim for relief grounded in fraud, but we have no doubt that they do. The loss alleged by the Picos is the money that they spent as a consequence of their reliance on Cutter's advertisement. Such consequential damages, if proven, constitute "out of pocket" losses. *See Ostano Commerzanstalt v. Telewide Systems, Inc.*, 880 F.2d 642, 648 (2d Cir.1989) ("Damages for fraud include the costs incurred in preparing for, performing, or passing up other business opportunity, . . . as well as costs incurred in making reasonable efforts to mitigate damages[.]") (citing *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 n. 6 (2d Cir.1986), and *Lanite Sales Co. v. Klevens Corp.*, 205 Misc. 303, 128 N.Y.S.2d 182, 188 (Sup.Ct. 1954)); *Walker v. Signal Companies, Inc.*, 84 Cal.App.3d 982, 149 Cal.Rptr. 119, 125 (1978) ("A party may recover consequential damages resulting from his acts in reliance on the other party's misrepresentations."); *Castle & Cooke, Inc. v. Lincoln Merchandise Corp.*, 103 A.D.2d 763, 477 N.Y.S.2d 390, 390 (N.Y.App.Div.1984) ("[T]he prime standard for measuring the actual pecuniary loss sustained as a direct result of fraud is the 'out of pocket rule'. . . . Recovery of profits which would have been realized in the absence of fraud is not possible under the 'out of pocket' theory . . . because the defrauded party is entitled solely to [the] recovery of the sum necessary for restoration to the position occupied before the commission of the fraud. . . . 'Out of Pocket' considerations do not, however, prevent recovery of other *consequential damages proximately caused by reliance upon the misrepresentation*[.]" (citations omitted) (some emphases added and some in the original)).

Accordingly, we hold that the money that the Picos expended in responding to Cutter's advertisement, if proved, satisfies the requirement of "substantial pecuniary loss" necessary to support a claim for relief grounded in fraud.

■ Furthermore, assuming that it was not abandoned, *see supra* note 20, we hold that the Picos' damages were also adequate to maintain a negligent misrepresentation claim. This court has held that a plaintiff claiming negligent misrepresentation must show that: "(1) false information [is] supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Blair v. Ing*, 95 Hawai'i 247, 269, 21 P.3d 452, 474 (2001) (citing *Kohala Agriculture v. Deloitte & Touche*, 86 Hawai'i 301, 323, 949 P.2d 141, 163 (App. 1997), and *Restatement (Second) of Torts* § 552 (1977)). Plaintiffs may recover the pecuniary losses caused by their justifiable reliance on a negligent misrepresentation. *See State ex rel. Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 919 P.2d 294 (1996) (recognizing that "pecuniary losses are recoverable in a claim for negligent misrepresentation"); *Chun v. Park*, 51 Haw. 462, 468, 462 P.2d 905, 909 (1969) (approving "out of pocket" expenses incurred in connection with the purchase of a property in reliance upon a negligent misrepresentation). *But see City Express, Inc. v. Express Partners*, 87 Hawai'i 466, 469, 959 P.2d 836, 839 (1998) (holding that "in the context of construction litigation regarding the alleged negligence of design professionals, a tort action for negligent misrepresentation alleging damages based purely on economic loss is not available to a party in privity of contract with a design professional[ ]").

Although such pecuniary losses will generally stem from a completed transaction, they need not. According to the *Restatement (Second) of Torts*, the damages recoverable for a negligent misrepresentation are:

> those [damages] necessary to compensate the plaintiff for the pecuniary loss to him [or her] of which the misrepresentation is a legal cause, including
>
> (a) the difference between the value of what he [or she] has received in the transaction and its purchase price or other value given for it; and
>
> (b) *pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.*

*Restatement (Second) of Torts* § 552B (1977) (emphasis added). We agree. Thus, pecuniary losses stemming from an attempt to conduct a transaction in reliance upon information negligently supplied are, assuming the plaintiff has established the other elements of the tort, sufficient to support a claim for negligent misrepresentation.

Therefore, because the Picos claim to have spent their three to five dollars in gasoline in reliance upon Cutter's advertisement, which they allege was intended to induce them to visit Cutter's lot for the purpose of purchasing an automobile, they have shown sufficient damages for the purposes of maintaining a negligent misrepresentation claim, assuming that they have not abandoned it, *see supra* note 20. Accordingly, the circuit court erred in granting summary judgment in favor of Cutter on the basis that the Picos' damages were inadequate.

## C. The Circuit Court Did Not Err In Failing To Dismiss The Picos' Third Amended Complaint In Its Entirety For Failure Sufficiently To Plead Any Cognizable Common Law Claim.

 Finally, Cutter argues in its cross-appeal that, whatever the merits of the Picos' common law claims, the circuit court erred in failing to dismiss the Picos' third amended complaint in its entirety when it dismissed the Picos' statutory claims, because their complaint did not provide fair notice of any common law claims. In particular, Cutter argues that the Picos failed to state a "fraud" claim with the specificity demanded by this court in *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 837 P.2d 1273 (1992).[22]

We agree that the Picos' third amended complaint is not a model of clarity.[23] Nevertheless, we need not consider whether their complaint, standing alone, satisfies Hawai'i Rules of Civil Procedure (HRCP) Rules 8 (2000)[24] and 9 (2000),[25] because, when the circuit court declined to speculate regarding the common-law claims that might lie there-

---

22. In *Larsen*, 74 Haw. at 30–31, 837 P.2d at 1288, we recognized that:

> [Hawai'i Rules of Civil Procedure (]HRCP[)] Rule 9(b) provides that "[i]n all averments of fraud ... the circumstances constituting fraud or mistake shall be stated with particularity." The rule is designed, in part, to insure the particularized information necessary for a defendant to prepare an effective defense to a claim which embraces a wide variety of potential conduct. 5 Wright & Miller, *Federal Practice and Procedure* § 1296 at 580 (1990). Thus, under Rule 9(b) general allegations of "fraud" are insufficient because they serve little or no informative function, *Wolfer v. Mutual Life Ins. Co. of New York*, 3 Haw.App. 65, 67, 641 P.2d 1349, 1359 (1982) (citing 5 Wright & Miller, *Federal Practice and Procedure* § 1298 at 415 (1969)); rather, a plaintiff must state the circumstances constituting fraud or mistake with particularity (e.g., allege who made the false representations) and specify the representations made. *Ellis v. Crockett*, 51 Haw. 45, 59, 451 P.2d 814, 823 (1969).

23. Although the Picos' third amended complaint does describe the specific circumstances giving

rise to their claims, it does not expressly identify the particular common law actions that the Picos seek to assert.

24. HRCP Rule 8(a) provides in relevant part:

> **Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.

25. HRCP Rule 9(b) provides in relevant part that, "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity. Malice intent, knowledge, and other conditions of mind of a person may be averred generally." We note that the Picos' third amended complaint particularizes (1) the false representations made, (2) Cutter's knowledge of their falsity, (3) the Picos' reliance upon the representations, and (4) their damages. The complaint does not, however, specifically allege

in, Cutter chose to move for a more definite statement. Indeed, this is generally the appropriate manner in which to resolve ambiguity in the pleadings. *See, e.g., Seligson v. Plum .Tree, Inc.*, 361 F.Supp. 748, 756 (E.D.Pa.1973) (construing a motion to dismiss a claim of fraud for failure to state the circumstances constituting fraud as a motion for a more definite statement), *overruled on other grounds by Seville Indus. Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir.1984) (recognizing that Federal Rules of Civil Procedure (FRCP) Rule 9(b) does not necessarily require fraud plaintiffs to allege the specific date, place, or time of each misrepresentation); *Britz v. Consolidated Casinos Corp.*, 87 Nev. 441, 488 P.2d 911, 915–16 (1971) ("failure of a plaintiff to comply with [the particularity requirement of pleading fraud] ... only subjects the complaint to a motion for a more definite statement, or at the very worst to dismissal with leave to amend" (citing *Sax v. Sax*, 294 F.2d 133 (5th Cir.1961))). As this court has stated, "by the adoption of HRCP we have rejected 'the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome' and in turn accepted 'the principle that the purpose of pleading is to facilitate a proper decision on the merits.' " *Hall v. Kim*, 53 Haw. 215, 221, 491 P.2d 541, 545 (1971) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Consequently, although the Picos' third amended complaint, standing alone, might be deficient, we must review it in conjunction with the Picos' more definite statement, which alleges a plethora of common law torts, including fraud (as well the specific circumstances giving rise to their claims), the sufficiency of which Cutter has not challenged.

D. *There Being No Binding Contractual Agreement, The Circuit Court Correctly Ruled That Cutter Was Entitled To Judgment As A Matter Of Law With Respect To The Picos' Contract Claim.*

■ The Picos urge that the circuit court erred in granting Cutter judgment as a matter of law with respect to their contract claim. The Picos argue that Cutter's advertisement amounted to a contractual offer that they were free to accept, thereby creating an enforceable contract. We disagree.

■ It appears that this court has never directly addressed the question whether an advertisement can constitute a contractual offer. *But see Sutton v. Hawaiian Trust Co., Ltd.*, 43 Haw. 310 (1959) (announcement that certain property will be sold at auction is not a binding contractual offer to sell but merely a declaration of intention to hold an auction at which bids will be received). There is substantial agreement among the courts that have addressed the question, however, that advertisements by merchants listing goods for sale at a particular price are generally invitations to deal, rather than binding contractual offers that consumers may freely accept. *See, e.g., Georgian Co. v. Bloom*, 27 Ga.App. 468, 108 S.E. 813, 814 (1921) (holding that newspaper advertisements, " 'stating that the advertiser has a certain quantity of goods which he [or she] wants to dispose of at certain prices, are not offers which become contracts as soon as any person to whose notice they might come signifies his [or her] acceptance by notifying the [seller] that he [or she] will take a certain quantity of them[ ]' "); *Steinberg v. Chicago Med. Sch.*, 69 Ill.2d 320, 13 Ill.Dec. 699, 371 N.E.2d 634, 639 (1977) (noting that advertisements for sale of goods at a fixed price are invitations to deal rather than binding offers); *Osage Homestead, Inc. v. Sutphin*, 657 S.W.2d 346, 351–52 (Mo.Ct.App.1983) (holding that an advertisement offering a rig for sale at a specified price was not a contractual offer); *Ehrlich v. Willis Music Co.*, 93 Ohio App. 246, 113 N.E.2d 252 (1952) (noting that an advertisement for sale of a television at a specified price "was no more than an invitation to patronize the store"). *See also* 1 Williston, *A Treatise on the Law of Contracts* § 4.7 at 286–87 (4th ed. 1990) ("if goods are advertised for sale at a certain price, it is generally

---

that Cutter's advertisement was published in order to induce reliance by consumers upon the information contained therein. This omission was corrected by the Picos' more definite statement, which also specifically alleged "fraud."

not an offer, and no contract is formed because of the statement of an intending purchaser that he will take a specified quantity of goods at that price"); *Restatement (Second) of Contracts* § 26 at 75 (1981) ("[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent"). Rather than make an offer, advertisements invite offers by prospective purchasers. "Only when the merchant takes the money is there an acceptance of the offer to purchase." *Steinberg,* 13 Ill.Dec. 699, 371 N.E.2d at 639; *see also Osage,* 657 S.W.2d at 351–52 (holding that a contract for sale of an advertised item was not complete until the seller accepted the buyer's offer to purchase based on the advertisement).

■ There is a very narrow, yet well-established, exception to this rule, which arises when an advertisement is "clear, definite, and explicit, and leaves nothing open for negotiation." *Lefkowitz v. Great Minneapolis Surplus Store,* 251 Minn. 188, 86 N.W.2d 689, 691 (1957); *see also R.E. Crummer & Co. v. Nuveen,* 147 F.2d 3, 5 (7th Cir.1945) (holding that advertisement inviting specific bond-holders to send their bonds to a designated bank for surrender pursuant to clearly specified terms constituted a binding contractual offer); *Leonard v. Pepsico, Inc.,* 88 F.Supp.2d 116, 124 (S.D.N.Y.1999) (holding that "the absence of any words of limitation[,] such as 'first come, first served,' [rendered] the alleged offer [for a fighter jet in exchange for 'Pepsi-points'] sufficiently indefinite that no contract could be formed[ ]"); *Donovan v. RRL Corp.,* 26 Cal.4th 261, 109 Cal.Rptr.2d 807, 27 P.3d 702, 711 (2001) (holding that a licensed automobile dealer's advertisement regarding a particular vehicle at a specific price constituted an offer in light of the California Vehicle Code, which rendered illegal the failure to sell the vehicle at the advertised price to any person while it remained unsold); *Izadi v. Machado (Gus) Ford, Inc.,* 550 So.2d 1135, 1139 (Fla.Dist.Ct. App.1989) (holding that car dealer's adver-

tisement offering a minimum $3,000 "allowance" for any vehicle that a consumer traded in, regardless of its actual value, constituted a binding contractual offer); *Oliver v. Henley,* 21 S.W.2d 576, 578–79 (Tex.Civ.App. 1929) (holding that an advertisement, offering to "ship sacks of 3 bushels each, freight prepaid, to any point in Texas for $4 per sack, said sack tagged according to our state seed laws," constituted a binding contractual offer); *Chang v. First Colonial Sav. Bank,* 242 Va. 388, 410 S.E.2d 928, 930 (1991) (holding that bank's advertisement promising two free gifts and $20,136.12 upon maturing in 3½ years in exchange for a $14,000 deposit constituted an offer that was accepted when $14,000 was deposited). In such advertisements, "there must ordinarily be some language of commitment or some invitation to take action without further communication." *Restatement (Second) of Contracts* § 26 at 76 (1981); *see also* 1 *Corbin on Contracts* § 2.4 at 116–122 (1993) (noting that advertisements are not presumed to be offers unless they contain unusually clear words to the contrary).

■ We agree with the foregoing well-established principles. Accordingly, we hold that advertisements are generally not binding contractual offers, unless they invite acceptance without further negotiations in clear, definite, express, and unconditional language.

The provisions of Cutter's advertisement upon which the Picos rely in asserting their contract claim do not constitute a binding contractual offer. As described in detail *supra* in section I, with the exception of the cash prices stated for five of the fourteen vehicles, the advertisement was hardly a model of clarity. The Picos themselves admitted that they were not certain what all of the fine print at the bottom of the advertisement meant. One of the few clear and intelligible statements located in the fine print, however, was that sales were "[o]n approved credit." But a condition that a sale be "on approved credit" cannot constitute an offer that a consumer is free unilaterally to accept.[26] *See, e.g., Ford Motor Credit Co. v.*

**26.** Even if the advertised financing terms were

an offer, acceptance would still have been condi-

*Russell,* 519 N.W.2d 460, 463 (Minn.Ct.App. 1994) (holding that advertisement containing financing terms was not a binding offer because not everyone qualified for financing). Thus, the advertised "$0 cash down/$229 per month" financing terms could not constitute a binding contractual offer because they invited the public to apply for financing, not to accept financing without any further manifestation of assent on Cutter's part.

The case would be different had the Picos sought to purchase the Grand Cherokee Laredo for the advertised cash price of $20,988.00. While advertisements of goods for sale at a particular price generally do not constitute binding contractual offers, *see* discussion *supra,* we must analyze advertisements for automobiles by licensed dealers in light of the Hawai'i Motor Vehicle Industry Licensing Act (HRS ch. 437 (1993 & Supp. 2000)). The California Supreme Court, for example, recently held that an advertisement by a licensed automobile dealer for the sale of a particular vehicle at a specified price constituted a binding contractual offer in light of a California statute rendering unlawful the failure "to sell a vehicle to any person at the advertised total price, exclusive of [specified charges, such as taxes and registration fees], while the vehicle remains unsold, unless the advertisement states the advertised total price is good only for a specified time and the time has elapsed[.]" *Donovan,* 109 Cal.Rptr.2d 807, 27 P.3d at 711 (quoting California Vehicle Code § 11713.1) (some brackets added and some in original). The *Donovan* court opined, in light of the California Vehicle Code, that it was reasonable for the consumer to interpret the advertisement as an offer to sell the vehicle without further negotiation, and, if the vehicle remained unsold, that any consumer was free to conclude the transaction by tendering the advertised purchase price.[27] *Id.*

The Hawai'i Motor Vehicle Industry Licensing Act similarly regulates advertisements for the sale of automobiles by licensed dealers. HRS § 437–4 (1993 & Supp.2000), relating to "[a]dvertising," provides in relevant part:

> (a) ... No new or used motor vehicle dealer shall advertise or offer for sale ... any motor vehicle not actually for sale at the premises of the dealer or available to the dealer from the manufacture[ ] or authorized new car distributor of such automobile at the time the advertisement or offer is made.
>
> (b) False, deceptive, or misleading advertising.
>
> . . . .
>
> (2) Any advertised product must be available on the stated terms from inventory, or by order with delivery within a reasonable period of time.

Although HRS § 437–4 does not expressly prohibit a dealer from refusing to sell a vehicle to a customer at the advertised price so long as it has remained unsold, like the California Vehicle Code, the Hawai'i statute does, by virtue of its mandate that advertised vehicles actually be available on the advertised terms, similarly justify a consumer's expectation that, if an automobile dealer advertises a particular vehicle at a particular cash price, the dealer intends to make a contractual offer to sell the vehicle for the stated cash price, so long as the vehicle remains unsold and the advertisement does not expressly limit the period of time within which the stated cash price remains in effect. Thus, under such circumstances, all that would be required of the consumer to conclude the contract, assuming the advertised vehicle were still available, would be to tender the advertised cash price.

In the present case, however, the Picos did not attempt to tender the advertised cash

---

tioned upon credit approval. Because the Picos never submitted credit information to Cutter for its approval, they were not in a position to accept any alleged offer of "0 cash down." Indeed, it could hardly come as a surprise to a reasonable consumer that Cutter would need to run a credit check before extending financing.

**27.** The *Donovan* court held that the statute did not alter the applicable common law regarding contractual offers, but, rather, changed consumer expectations, which was "relevant in determining whether defendant's advertisement constituted an offer pursuant to governing principles of contract law." 109 Cal.Rptr.2d 807, 27 P.3d at 712.

price for the Cherokee Laredo. Rather, the Picos sought to finance the vehicle. Accordingly, we hold that the portion of Cutter's advertisement upon which the Picos rely did not amount to a contractual offer, but was merely an invitation to deal.

E. *The Circuit Court Correctly Denied Cutter's Motion For Attorneys' Fees, Costs, And Sanctions Pursuant To HRS §§ 481A–4 And 607–14.5 And HRCP Rule 11.*

■ Cutter claims that the circuit court erred in denying its requests for attorneys' fees, costs, and sanctions pursuant to HRS §§ 481A–4, *see supra* note 4, and 607–14.5, *see supra* note 5, and HRCP Rule 11, *see supra* note 6. We disagree.

■ There is no evidence in the record that the Picos knew their HRS § 481A claim to be "groundless," as required for an award of attorneys' fees under HRS § 481A–4(b). In any event, the award of both costs and attorneys' fees under HRS § 481A–4(b) is within the discretion of the circuit court. *See supra* section II.C. Furthermore, it is apparent that the Picos' claims were neither frivolous nor pursued in bad faith, as required for an award of attorneys' fees and costs under HRS § 607–14.5 and sanctions under HRCP Rule 11. Thus, we cannot say that the circuit abused its discretion in ruling that the Picos' claims were neither frivolous, groundless, nor brought in bad faith.

Accordingly, we hold that the circuit court did not err in denying Cutter's motion for

attorneys' fees, costs and sanctions, pursuant to HRS §§ 481A–4 and 607–14.5 and HRCP Rule 11.

## IV. *CONCLUSION*

In light of the foregoing, we vacate the amended judgment of the circuit court and remand the case for further proceedings consistent with this opinion.

### Concurring Opinion of ACOBA, J.

I concur in the majority's resolution of the claims of Plaintiffs–Appellants/Cross–Appellees Mary Zanakis–Pico and Thomas M. Pico (the Picos).[1] As to the Picos' tort claims, I write separately (1) to clarify that minimal sums of compensatory damages are not synonymous with "nominal damages," as seemingly suggested by the Picos, and (2) to dispel the view of the circuit court of the first circuit (the court) that "substantial pecuniary damage" encompasses a threshold amount. I believe it is essential in our case law to maintain clarity in the definitions, application, and use of terms such as compensatory, punitive, and nominal damages and "substantial" pecuniary damage. The imprecise use of these terms leads to confusion, but, worse, may deprive parties of remedies or defenses to which they would otherwise be properly entitled.

### I.

In their opening brief, the Picos characterize their claim for gasoline expenses as "nom-

1. Because I believe we should endeavor to provide as much guidance as possible to the parties, counsel, and the trial courts, I wholeheartedly agree with the decision to publish this opinion. This decision applies new rules of law. Various jurisdictions, both federal and state, by rule, either mandate publication of opinions adopting new rules of law or, at the very least, advise that such opinions should be published. *See* 4th Cir. R. 36(a) (stating that an opinion will be published if it "establishes, alters, modifies, clarifies, or explains a rule of law within [the Fourth] Circuit"); 5th Cir. R. 47.5.1 (explaining that an opinion is published if it "establishes a new rule of law"); 6th Cir. R. 206(a) (indicating that "whether [a decision] establishes a new rule of law" is considered in determining whether an opinion is published); 7th Cir. R. 53(c)(1) (stating that "a published opinion will be filed when

the decision establishes a new, or changes an existing rule of law"); Cal. R. Ct. 976(b) (determining that an opinion of the Court of Appeals or other appellate department may be published if it "establishes a new rule of law", or fulfills other criteria); Mich. Ct. R. 7.215(A)-(B) (ordering that "[a] court opinion must be published if it ... establishes a new rule of law").

Also, as a matter of sound appellate principle, this decision is appropriately published. *See ABA Standards of Appellate Courts* § 3.37, at 63 (1977). ("A concurring or dissenting opinion should be published if its author believes it should be; if such an opinion is published the majority opinion should be published as well."). Although the ABA Standards are not adopted in our jurisdiction, I believe this ABA Standard to be a salutary one.

inal compensatory damages for their ... actual expense in responding to [Defendant Appellee/Cross Appellant Cutter]'s advertisement." However, this appears to confuse "nominal damages" with compensatory damages, an error that may have dramatic effects on the ability to recover damages, in some cases.

## II.

With respect to awards to a plaintiff for a tort action, it is axiomatic that three basic categories exist: (1) compensatory damages (general and specific); [2] (2) punitive damages (also called "exemplary damages"); and (3) nominal damages. *See Restatement (Second) of Torts* § 907 cmt. a (1979) ("Nominal damages are to be distinguished from compensatory damages on the one hand and from punitive damages on the other[.]"). "Compensatory damages" are a broad range of damages that seek to restore a plaintiff to his or her position prior to the tortious act. 1 Minzer, et al., *Damages in Tort Actions*, § 1.01[3] (Matthew Bender 1996) [hereinafter *Damages in Tort Actions*]. Compensatory damages include "damages for pain and suffering, emotional distress, permanent injury, loss of enjoyment of life, medical expenses, lost wages, impairment of earning capacity, [and] damage to personal property." *Id.*

By contrast, "nominal damages" are "a small and trivial sum awarded for a technical injury due to a violation of some legal right and as a consequence of which some damages must be awarded to determine the right." *Van Poole v. Nippu Jiji Co.*, 34 Haw. 354,

360 (1937); *see also Restatement (Second) of Torts, supra,* § 907 (defining nominal damages as "a trivial sum of money *awarded* to a litigant who has established a cause of action but had not established that he [or she] is entitled to compensatory damages" (emphasis added)); C. McCormick, *Handbook on the Law of Damages* § 20, at 85 (1935) ("Nominal damages are damages awarded in a trivial amount merely as a recognition of some breach of a duty owed by [a] defendant to [a] plaintiff and not as a measure of recompense for loss or detriment sustained ... [and are] merely symbolic.").

Thus, whereas compensatory damages are "monetary damages awarded to recompense a tort victim for the value of the loss sustained[,]" 1 *Damages in Tort Actions, supra,* § 3.01, nominal damages are awarded when there has been a technical invasion of a plaintiff's rights or a breach of a legal duty and either (1) no harm or damage has resulted; or (2) although the plaintiff proves harm, its amount or extent is not proven with sufficient certainty to entitle him or her to an award of compensatory damages. *See id.* § 2.10; *Black's Law Dictionary* 392 (6th ed. 1990) ("Nominal damages are a trifling sum awarded to a plaintiff in an action, where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of [the plaintiff's] rights or a breach of the defendant's duty, or in cases where, although there has been a real injury, the plaintiff's evidence entirely fails to show its amount.").

2. "General damages," as compensation sought by a plaintiff, "encompass all the damages which naturally and necessarily result from a legal wrong done. Such damages follow by implication of law upon proof of a wrong[.]" *Ellis v. Crockett*, 51 Haw. 45, 50, 451 P.2d 814, 819 (1969) (internal citation omitted). "General damages" have been defined as "damages for a harm so frequently resulting from the tort that is the basis of the action that the existence of the damages is normally to be anticipated and hence need not be alleged in order to be proved." 1 Minzer, et al., *Damages in Tort Actions*, § 1.01[4] (Matthew Bender 1996) [hereinafter *Damages in Tort Actions*]. Whether damages are anticipated by a claim depends upon the specific tort and the harm pled. *See id; Restatement (Second) of Torts* § 904 cmts. a-c (1979).

Special damages are the "natural but not the necessary result of an alleged wrong and ... depend on the circumstances peculiar to the infliction of each particular injury." *Ellis*, 51 Haw. at 50, 451 P.2d at 819 (citations omitted). "To recover special damages, a plaintiff must both plead and prove each item of loss claimed [because s]pecial damages flow from the individualized factors of an injury." 1 *Damages in Tort Actions, supra,* § 3.01[3]. In personal injury torts, "[s]pecial damages are often considered to be synonymous with pecuniary loss and include such items as medical and hospital expenses, loss of earnings, and diminished capacity to work." *Dunbar v. Thompson*, 79 Hawai'i 306, 315, 901 P.2d 1285, 1294 (App.1995) (quoting 22 Am. Jur.2d *Damages* § 41, at 65, (1993)).

Our appellate courts have recognized the concepts embodied in the first category. *See, e.g., Weinberg v. Mauch,* 78 Hawai'i 40, 44, 890 P.2d 277, 281 (stating that the plaintiffs "have also failed to prove damages. They argue that . . . only a showing of nominal damages [is required]—that a breach occurred and therefore damages can be inferred. However, to maintain a tortious interference with contract claim . . ., the plaintiff must show that a breach has occurred and must separately establish damages"), *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995); *Island–Gentry Joint Venture v. State,* 57 Haw. 259, 267, 554 P.2d 761, 766–67 (1976) ("The law on the measure of damages, wherein the purchaser breaches an executory contract to purchase land, is that the vendor is entitled to recover against the defaulting vendee the difference between the contract price for the sale and the market value of the land on the date of breach[, unless] the market value of the land on the date of breach [is] greater than the contract price, [then] the vendor is entitled only to nominal damages."); *Hall v. American Airlines, Inc.,* 1 Haw.App. 258, 262, 617 P.2d 1230, 1234 (1980) (determining that nominal damages were appropriate where "counsel for appellant stated that his client was not interested in damages but that the case was one of principle").

Likewise, our jurisdiction has confirmed the proposition embodied in the second category. *See, e.g., Neary v. Martin,* 57 Haw. 577, 584, 561 P.2d 1281, 1286 (1977) (determining that where "[t]he trial court made no finding, and the record contains no evidence, with respect to the amount of the actual loss or injury sustained by Appellees, . . . we conclude that the judgment for substantial damages must be set aside and only nominal damages may be awarded"); *Uyemura v. Wick,* 57 Haw. 102, 110, 111–12, 551 P.2d 171, 177, 178 (1976) (determining that, because "[a] review of the record further fails to show any evidence of any basis by which the trial court could reasonably measure the loss and damages suffered by appellee[,]" "any judgment in favor of appellee for damages suffered, over and above nominal damages, would be unsupported by the record herein"); *Omura v. American River Investors,* 78 Hawai'i 416, 418, 894 P.2d 113, 115 (App.1995) (holding that when a plaintiff has proven injury but has failed to prove the amount of damages, the plaintiff is only entitled to nominal damages). Thus, a small award of compensatory damages is distinguishable from nominal damages awarded to recognize a technical violation, but not to compensate the plaintiff for the amount of harm caused. *See, e.g., McGrew Mach. Co. v. One Spring Alarm Clock Co.,* 124 Neb. 93, 245 N.W. 263, 266 (1932) ("By the term 'nominal damages' is meant a trivial sum, which *recognizes a right, but makes no adequate return therefor.* It has been said that a return of nominal damages is really no damages at all, but a mere peg to hang the costs on." (Citations omitted.) (Emphasis added.)).

### III.

### A.

As noted by one treatise on tort damages, the distinction between nominal damages and small awards of compensatory damages is sometimes misapplied, leading to confusion:

It should be recognized that *courts have not always been precise in their choice of terminology to describe particular damage awards.* In some cases, although the plaintiff has made out a cause of action and presented sufficient proof of damages to warrant an assessment of compensatory damages, the loss or harm may be trivial in nature—justifying nothing more than a minimal award. *Courts have sometimes imprecisely characterized such minimal awards as "nominal damages." The use of the term "nominal damages" in these instances is technically incorrect, since the small monetary sum awarded is, in reality, compensatory for the injury sustained.* It would be less confusing if the courts—and litigants—would use the term "minimal" rather than "nominal" to describe what are actually insubstantial or trivial compensatory damage awards.

1 *Damages in Tort Actions, supra,* § 3.01 (emphases added). *See also Cowan v. Flannery,* 461 N.W.2d 155, 159 (Iowa 1990) ("Nominal damages are allowed, not as an equivalent for the wrong, but in recognition

of a technical injury and by way of declaring a right and are not the same as damages small in amount." (Citing *Danker v. Iowa Power & Light Co.*, 249 Iowa 327, 86 N.W.2d 835, 837 (Iowa 1957).)); *Richard v. Hunter*, 151 Ohio St. 185, 85 N.E.2d 109, 111 (1949) ("Small actual damages are not, however, to be confused with mere nominal damages, and the fact that the damages are small does not bring the case within the rule that nominal damages will not support a verdict for punitive damages." (Quoting 15 Am.Jur. *Damages* § 271.)); *Texas & P.R. Co. v. Heathington*, 115 S.W.2d 495, 499 (Tex.Civ.App.1938) (stating that, "[t]he fact that the amount in controversy is small is no reason why plaintiff should not be permitted to prove, if he can, his damages" where the amount in controversy was $50.00); 22 Am.Jur.2d *Damages* § 13 (1988) ("[N]ominal damages mean damages in name only and not for any substantial amount. Such damages are to be distinguished from a small award of damages. A small amount of damages may still be substantial, if that sum is sufficient to compensate the injured party for all the damage actually sustained.").

For example, in *Buden v. Dombrouskas*, 147 Conn. 728, 166 A.2d 157 (1960), the trial court awarded $340 to a plaintiff. *See id.* at 157. The plaintiff had claimed damages in the amount of $15,000 for a breach of covenants by the lessor defendant. *See id.* In making the award, the trial court stated, "The damages I find to be nominal on any ground that is alleged in the complaint. So damages—judgment may be rendered for the plaintiff to recover $340." *Id.* at 158. On appeal, the Connecticut Supreme Court observed that the trial court had incorrectly used the term "nominal," stating that "[n]ominal damages mean no damages. They exist only in name, and not in amount." *Id.* at 157. The appellate court explained that "[i]t is obvious from the language of the court that it spoke extemporaneously and without legal precision in commenting on the trivial character of the case. Clearly, it was using the word 'nominal' as the equivalent of 'small.'" *Id.* at 158. Accordingly, the court determined that the $340 award was, in actuality, compensatory damages, and let the award stand. *See id.*

Other jurisdictions have also confirmed the award of small sums of money as compensatory damages when that is all that is needed to compensate the plaintiff. *See, e.g., Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1208 (8th Cir.2002) (disagreeing with defendant that jury's award of $1.00 in actual damages were, in fact, nominal damages, because "the jury could have found plaintiffs each entitled to a small amount of monetary compensation"); *Werschkull v. United Cal. Bank*, 85 Cal.App.3d 981, 149 Cal.Rptr. 829 (1978) (upholding the award of compensatory damages in the amount of $1); *Frazee v. Brazda*, 239 Or. 624, 399 P.2d 346, 347 (1965) (determining that $25 was not nominal damages, inasmuch as the jury "may well have concluded also that $25 was reasonable compensation for a superficial bruise or abrasion and that $25 was reasonable compensation for any medical treatment which may have been required by such an injury").

### B.

Similarly, in Hawai'i case law, nominal damages have never referred to a small sum of *compensatory* damages. *See Uyemura*, 57 Haw. at 111, 551 P.2d at 177 ("And in defining nominal damages we stated: '... the sum of One Dollar and his costs.'" (Quoting *Ferreira v. Honolulu Star–Bulletin*, 44 Haw. 567, 580, 356 P.2d 651, 658, *reh'g denied*, 44 Haw. 581, 357 P.2d 112 (1960).) (Ellipses points in original.)). In fact, prior Hawai'i cases have expressly limited nominal damages, because it is only a token, to $1.00. *See Ferreira*, 44 Haw. at 579, 356 P.2d at 658 (considering that other jurisdictions term various awards as nominal damages, ranging from $300 to 6 cents, and, noting that "[a] vast majority of cases hold that nominal damages are a token award only and usually adjudge one dollar to be the amount[,]" adopting the majority rule); *Minatoya v. Mousel*, 2 Haw.App. 1, 6, 625 P.2d 378, 382 (1981) ("We think *Ferreira*[, *supra*,], is binding authority that nominal damages may not exceed $ 1.00."). Thus, in order to faithfully adhere to the law, the distinction between "nominal damages," a symbolic award, and compensatory damages that are of a small amount, should be maintained.

## IV.

As indicated in the foregoing discussion, the damages sought by the Picos are more accurately characterized as "compensatory," and not nominal in the legally accepted sense. The Picos here sought, *inter alia*, compensatory damages of a special nature, given that compensation for travels costs is "not the necessary result", *Ellis*, 51 Haw. at 50, 451 P.2d at 819, of the alleged misrepresentation in Cutter's advertisement. *See supra* note 1. As indicated in their third revised complaint, "Plaintiffs demand[ed] judgment against Defendant Cutter ... as follows: ... special damages in such amounts as will be proved at trial." In the Picos' Settlement Conference Statement, special damages were stated to include "Plaintiffs' actual loss for the cost of gas to travel to and from the Cutter dealership on September 14, 1997." The amount at issue was stated by the Picos as "$3.00 to $5.00 worth of gas[.]"

The Picos sufficiently pled these special damages in the amended complaint, for purposes of Hawai'i Rules of Civil Procedure (HRCP) Rule 9(g). This rule provides that, "[w]hen items of special damage are claimed, they shall be specifically stated." By alleging "special damages in such amounts as will be proved at trial" in their amended complaint, the Picos met the specificity required in Rule 9(g). *See In re Genesys Data Techs., Inc.*, 95 Hawai'i 33, 42, 18 P.3d 895, 904 (2001) (determining that the plaintiff's prayer for relief in the form of "general, special, treble, and punitive damages in an amount to be determined at trial" in its complaint was sufficiently specific for purposes of HRCP Rule 9(g) (internal quotation marks and citation omitted)).

The Picos' claim for "$3.00 to $5.00 worth of gas" was clearly to compensate them for traveling to the Cutter automobile lot, rather than simply a request for a symbolic token, unrelated to any specific compensable claim.[3] As mentioned, the Picos met the necessary requirements for pleading these damages, pursuant to HRCP Rule 9(g). Accordingly, although minimal in amount, the Picos' claim is for compensatory damages, and not for nominal damages. Thus, the Picos' claim, such as it is, cannot be precluded on the basis that their special damages claim was "nominal."

## V.

As to the Picos' fraud allegation, nominal damages, properly defined, *see supra*, may be a basis for punitive damages in fraud actions, because the aim of punitive damages is to punish the defendant, rather than to compensate the plaintiff. *See, e.g., Wagstaff v. Protective Apparel Corp.*, 760 F.2d 1074 (10th Cir.1985) (fraud); *Life Ins. Co. v. Smith*, 719 So.2d 797 (Ala.1998) (fraud); *Pihakis v. Cottrell*, 286 Ala. 579, 243 So.2d 685 (1971) (fraud and deceit); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 477 A.2d 1224 (1984) (legal fraud); *Beavers v. Lamplighters Realty, Inc.*, 556 P.2d 1328 (Okla.Ct.App.1976) (fraud). An award of punitive damages rests upon the egregious nature of a defendant's conduct, *see Masaki v. General Motors Corp.*, 71 Haw. 1, 7, 780 P.2d 566, 570 ("In determining whether an award of punitive damages is appropriate, the inquiry focuses primarily upon the defendant's mental state, and to a lesser degree, the nature of his [or her] conduct."), *reconsideration denied*, 71 Haw. 664, 833 P.2d 899 (1989), rather than the extent of proof of injury a plaintiff can show at trial.

Of course, nominal damages may be the basis for punitive damages in other tort actions.[4] Hence, an imprecise use of the term

---

3. Because this case establishes precedent, it has implications far beyond its own facts and will impact cases that encompass greater loss.

4. When appropriate, based upon the conduct of the defendant, an award of punitive damages may be awarded in civil rights actions. *See, e.g., Ault v. Lohr*, 538 So.2d 454, 456 (Fla.1989) (although based on a civil rights action, stated that, under the law of Florida, "a finding of liability alone will support an award of punitive damages even in the absence of financial loss for which compensatory damages would be appropriate" (internal quotation marks and citation omitted)); *Sanchez v. Clayton*, 117 N.M. 761, 877 P.2d 567, 573 (1994) (stating that nominal damages may be the basis of an award of punitive damages in intentional torts, because "the jury may award nominal damages to acknowledge that the cause of action was established and punitive damages to punish the wrongdoer for violating the rights

"nominal" may have the effect of allowing defendants who have harmed plaintiffs to escape punitive damages, even when an award of such damages would be appropriate.

## VI.

As to the Picos' deceit and misrepresentation claims, the court concluded that these actions were barred, based upon the inaccurate characterization of the Picos' damage as not "substantial pecuniary damage." It must be observed that the court apparently granted summary judgment regarding all of the Picos' tort claims because, *inter alia*, it believed that the Picos' claim of three to five dollars for gasoline expenses was not "substantial" enough to satisfy a requirement of "substantial pecuniary damage."[5]

Cutter argued, and the court believed that the special compensatory damages alleged were not "substantial pecuniary damage," and proof of that nature was required in order for the tort claims to proceed. As with the implied threshold in the Picos' characterization of their gasoline expenses as "nominal," the use of the term "substantial" similarly does not connote a threshold, as believed by Cutter and the court.

of the victim"); *Save Charleston Found. v. Murray*, 286 S.C. 170, 333 S.E.2d 60, 65 (S.C.Ct.App. 1985) (conversion).

Moreover, in cases alleging constitutional violations, courts allow punitive damage awards without either compensatory or nominal damage awards. *See King v. Macri*, 993 F.2d 294, 297–98 (2d Cir.1993) (allowing punitive damage awards to stand in § 1983 claims alleging excessive force, false arrest, and malicious prosecution, although jury did not award either compensatory or nominal damages) (citing for the same proposition, *Glover v. Alabama Dep't of Corrections*, 734 F.2d 691, 694 (11th Cir.1984), *rev'd on other grounds*, 474 U.S. 806, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985); *McCulloch v. Glasgow*, 620 F.2d 47, 51 (5th Cir.1980); *Guzman v. Western State Bank of Devils Lake*, 540 F.2d 948, 953 (8th Cir.1976); *Silver v. Cormier*, 529 F.2d 161, 163–64 (10th Cir.1976); *Spence v. Staras*, 507 F.2d 554, 558 (7th Cir.1974); *Gill v. Manuel*, 488 F.2d 799, 802 (9th Cir.1973); *Basista v. Weir*, 340 F.2d 74, 87–88 (3d Cir.1965)).

**5.** Cutter and the court apparently relied upon *Hawai'i's Thousand Friends v. Anderson*, 70 Haw. 276, 768 P.2d 1293 (1989), for the proposition

## A.

In *Hawai'i's Thousand Friends v. Anderson*, 70 Haw. 276, 768 P.2d 1293 (1989), this court stated that fraud, or the common law tort action of deceit,[6] requires a showing that

(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them. Further, plaintiff must show that he [or she] suffered *substantial pecuniary damage* for the aim of compensation in deceit cases is to put the plaintiff in the position he [or she] would have been had he [or she] not been defrauded.

*Id.* at 286, 768 P.2d at 1301 (citations and brackets omitted) (emphasis added). *Ellis* considered the issue of damages in deceit cases. *See* 51 Haw. at 52–53, 451 P.2d at 820. This court defined the required damage as "substantial actual damage, not nominal or speculative." *Id.* at 52, 451 P.2d at 820 (citation omitted). "The courts have often expressed this requirement in terms of *pecuniary* damage[.]" *Id.* (emphasis in original) (citing *Hanlon v. Macfadden Pubs., Inc.*, 302

that, in an action for deceit, a "plaintiff must show that he [or she] suffered substantial pecuniary damage[.]" 70 Haw. at 286, 768 P.2d at 1301 (citing *Ellis*, 51 Haw. at 52, 451 P.2d at 820).

**6.** The *Restatement (Second) of Torts* § 525 (1977) describes this action as "fraudulent misrepresentation." It states:

One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him [or her] by his [or her] justifiable reliance upon the misrepresentation.

Section 531 of the *Restatement* (1977) provides that

[o]ne who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he [or she] intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered · by them through their justifiable reliance in the type of transaction in which he [or she] intends or has reason to expect their conduct to be influenced.

N.Y. 502, 511, 99 N.E.2d 546, 551 (1951); *Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd.,* 265 F.2d 418, 421 (2d Cir.1959); *Restatement of Torts* § 549 (1938)). "The aim of compensation in deceit cases is to put the plaintiff in the position he [or she] would have been had he [or she] not been defrauded." *Id.* Because a plaintiff may not recover for mental anguish and humiliation not intentionally inflicted, *see id.,* the plaintiff's claims were said to be confined to "pecuniary damage," "which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses." *Id.* at 52–53, 451 P.2d at 820.

### B.

The element of "substantial pecuniary damage," then, in a deceit action refers to proof of injury, *i.e.,* pecuniary injury rather than the award of damages, as maintained by Cutter and the court. Generally, "substantial damages" are "[a] sum, assessed by way of damages, which is worth having; opposed to nominal damages, which are assessed to satisfy a bare legal right[; c]onsiderable in amount and intended as a real compensation for a real injury." *Black's Law Dictionary* at 392. *See* 22 Am.Jur.2d *Damages* § 12 (1988). By contrast, "substantial," as it applies to the loss that a plaintiff must show to meet the requirement for damage, means "[b]elonging to substance; actually existing; real; not seeming or imaginary; not illusive; solid; true; veritable." *Black's Law Dictionary* at 1428. Accordingly, in my view, "substantial actual damage," as adopted by this court in *Ellis,* 51 Haw. at 52, 451 P.2d at 820, refers to this latter definition-rather than imposing some sort of threshold as to the amount of damages, the loss sustained by a plaintiff must be substantive or real, rather than speculative.

### 1.

Rather than supporting a threshold construction, the source from which the *Ellis* court adopted this phrase indicates that "substantial" is used to convey certainty with respect to damages. The *Ellis* court adopted the term "substantial" from *Prosser and Keeton on Torts,* W.P. Keeton, *Prosser and Keeton on the Law of Torts* § 30, at 164–65 (5th ed. 1984) [hereinafter *Prosser and Keeton on Torts*], *see* 51 Haw. at 52, 451 P.2d at 820 ("In order to have a claim based on deceit, the plaintiff must have suffered substantial actual damage, not nominal or speculative. Prosser, *Law of Torts* at 748 (3d ed. 1964)."), which, in turn, cited to cases that explain the use of the term "substantive." *See Prosser and Keeton on Torts, supra,* § 110, at 765.

The cases relied upon by Professors Prosser and Keeton do not set a threshold, but relate to the requirement that a plaintiff show loss or injury with some certainty. For example, in *Casey v. Welch,* 50 So.2d 124 (Fla.1951), the Florida Supreme Court determined that, because "the plaintiff was unable to prove *any damage,* and the record is devoid of evidence that plaintiff was injured by the defendant's misrepresentations[,]" the judgment in favor of plaintiff should be reversed and the case remanded. *Id.* at 124–25. That supreme court said that "[i]t is of the very essence of an action of fraud or deceit that the same shall be accompanied by damage." *Id.* at 125. *Prosser and Keeton on Torts* also relied upon *Tsang v. Kan,* 78 Cal.App.2d 275, 177 P.2d 630 (1947).

In that case, the California Appellate Court applied a statute which provided that, "[o]ne who willfully deceives another with intent to induce him [or her] to alter his [or her] position to his [or her] injury or risk, is liable for *any damage* which he [or she] thereby suffers." *Id.* at 633. Stating the general rule that "[i]t is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action[,]" the court determined that, assuming a promise had been made, it was "difficult to see that [plaintiff] was damaged thereby[,]" when it did not appear that plaintiff relied on any promises by defendant.[7]

---

7. *See also Castleman v. Stryker,* 107 Or. 48, 213 P. 436, 438 (1923) (stating that "fraud without damage is not sufficient to support an action ... [h]owever, if it be established that the fraud operated to the prejudice of the party to a slight extent only, if its sufficient, as fraud gives a cause of action if it leads to any sort of damage[,]" and affirming the trial court's grant of plaintiff's mo-

*Id.* Accordingly, the general rule drawn from these cases is not that some threshold is required, but that some pecuniary damage must be shown. That is the general rule adopted by this court in *Ellis*.

### 2.

Other courts have also disapproved an interpretation of the term "substantial" as quoted from *Prosser and Keeton on Torts* as establishing a threshold amount. In *Dilworth v. Lauritzen*, 18 Utah 2d 386, 424 P.2d 136 (1967), after stating the rule that "one of the essential elements of fraud and deceit is that the plaintiff sustain damages[,]" the Supreme Court of Utah quoted Prosser, *Law of Torts*, § 107, at 747 (3d. ed.), to the effect that "the plaintiff must have suffered substantial damage before the cause of action can arise." *Id.* at 138. In a later case, *Turner v. General Adjustment Bureau, Inc.*, 832 P.2d 62 (Utah Ct.App.), *cert. denied*, 843 P.2d 1042 (Utah 1992), *overruled on other grounds by Campbell v. State Farm Mut. Auto. Ins. Co.*, 2001 UT 89, —— P.3d ——, 2001 WL 1246676 (2001) (overturning *Turner's* holding on the availability of emotional damages for fraud), the Utah Court of Appeals addressed the defendants' claim that "substantial damage" was a threshold requirement in a fraud case. *Id.* at 66 n. 1. In that case, the defendants, employees of a firm hired to investigate the plaintiff's husband's worker's compensation claim, had masqueraded as a product marketing research company, in order to gain access to the plaintiff's home. *See id.* at 64–65. Defendants asked plaintiff to participate in a shopping spree. *See id.* On the day of the shopping spree, however, defendants canceled the shopping trip. *See id.* at 65.

Plaintiff later discovered that defendants were merely attempting to obtain information about her husband's activities. *See id.* She filed suit, claiming, *inter alia*, fraud. *See id.* As damages, plaintiff claimed that she had hired and paid a babysitter approximately $20.00 as a result of the invitation for the shopping spree, and that she lost time that she could have spent working for her landlord in exchange for rent credits. *See id.* Plaintiff sought special, general, and punitive damages. *See id.*

At the close of the case, the jury returned a verdict against plaintiff on the fraud charge, and therefore, did not reach the issue of damages. *See id.* Plaintiff requested a judgment notwithstanding the verdict, which the trial court granted. *See id.* The trial court determined that the plaintiff had proved damages for $20.00, but concluded that the evidence regarding damage for lost work time was "too speculative." *Id.*

On appeal, defendants declared that the trial court had erred because "competent evidence supported the jury's verdict of no fraud in that [plaintiff] was not damaged as a result of the undercover investigation." *Id.* at 65–66. Relying upon *Dilworth*, *supra*, defendants maintained that plaintiff had to prove "substantial damage" in order to recover for fraud. *Id.* at 66 n. 1. The court, however, declined to read this statement as a threshold for damages. *See id.* "[Defendants] read[ ] *Dilworth* too broadly. Utah law requires that a party sustain only some injury or damage." *Id.* (citations omitted).[8]

### C.

Consequently, although the term "substantial" is employed in some formulations, that

tion for a directed verdict because defendants "wholly failed to establish" their loss) (citation omitted); *Benson v. Garrett Inv. Co.*, 287 P.2d 405, 408 (Cal.App. Dep't Super. Ct.1955) (in "an action for damages for fraud, it is fatally defective in failing to allege any damage-there being neither an allegation of general damages or the value of plaintiff's property which she conveyed to defendant"); *Dilworth v. Lauritzen*, 18 Utah 2d 386, 424 P.2d 136, 138 (1967) (determining that the trial court was "justified in ruling for the defendant on the further ground that no competent evidence was given regarding the damages which might have been sustained even if there

had been fraud[,]" and stating that "[t]his is so because one of the essential elements of fraud and deceit is that the plaintiff sustain damages").

8. In reviewing the trial court's grant of judgment notwithstanding the verdict, the court determined that plaintiff had not proven this damage adequately, *see Turner*, 832 P.2d at 66, and, thus, the judgment notwithstanding the verdict should not have been granted. Hence, although the amount of damage was sufficient, the damage was not proven with sufficient certainty to warrant a verdict for the plaintiff.

word refers to the requirement that such damages be pecuniary in nature and not speculative. Indeed, in deceit actions, Hawai'i appellate courts have *only barred recovery when there is no evidence of pecuniary damages at all. See Shanghai Inv. Co. v. Alteka Co.,* 92 Hawai'i 482, 498, 993 P.2d 516, 532 (2000) (affirming the trial court's determination that "because Alteka did not prove pecuniary damage, the jury's verdict on the issue of fraud was not supported by the evidence"), *overruled in part on other grounds by Blair v. Ing,* 96 Hawai'i 327, 31 P.3d 184 (2001); *Larsen v. Pacesetter Sys., Inc.,* 74 Haw. 1, 29, 837 P.2d 1273, 1288 ("An action based on fraud will not lie where plaintiff has suffered no injury or damage." (Citations omitted.)), *amended on reconsideration,* 74 Haw. 650, 843 P.2d 144 (1992); *Hawai'i's Thousand Friends,* 70 Haw. at 286, 768 P.2d at 1301 (stating that there was no evidence that plaintiff had suffered any pecuniary damage as a result of any misrepresentations); *Ellis,* 51 Haw. at 53, 451 P.2d at 820 (determining that the plaintiff did not allege any loss from the misrepresentations).

Consequently, as employed in *Ellis,* "substantial actual damage" is a synonym for "pecuniary damage," 51 Haw. at 52, 451 P.2d at 820, that is, damage "[s]uch as can be estimated in and compensated by money; not merely the loss of money or salable property or rights, but all such loss, deprivation, or injury as can be made the subject of calculation and of recompense in money[,]" *Black's Law Dictionary* at 392 (citing *Ellis,* 51 Haw. at 86, 451 P.2d at 820).

### D.

Hawai'i cases have, in fact, treated the terms alike. *Ellis,* the first case to use the term "substantial," employed the terms "substantial actual damage" and "pecuniary damage" interchangeably. After first stating that a plaintiff must prove "substantial actual damage," *id.* at 52, 451 P.2d at 820, in deceit cases, this court utilized only the term "pecuniary damage" in the balance of the opinion. It was pointed out that the term "pecuniary damages" referred to established expenses and not the amount of such loss:

Pecuniary damages, being narrow in scope, are those damages (either general or special) which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses. In fraud or deceit cases, the measure of pecuniary damages is usually confined to either the "out-of-pocket" loss (*see, e.g., Beardmore v. T.D. Burgess Co.,* ... [245 Md. 387] 226 A.2d 329 (1967)) or the "benefit of the bargain" (difference between the actual value at time property is sold and the value it would have had if the representations had been true) (*see, e.g., McInnis & Co. v. Western Tractor [&] Equip. Co.,* ... [67 Wash.2d 965] 410 P.2d 908, 910 (1966)).

*Id.* at 52–53, 451 P.2d at 820. This court concluded that "[w]e do not reach the question of which measure is applicable in this case since the *plaintiffs do not appear to have alleged any pecuniary loss* from the alleged misrepresentations." *Id.* at 53, 451 P.2d at 820 (emphasis added).

The Intermediate Court of Appeals (ICA) has similarly construed *Ellis* as referring to "pecuniary damages," inasmuch as the *Ellis* opinion itself uses that term as the equivalent of "substantial actual damage." Reiterating the rule in *Ellis,* the ICA stated in *Cresencia v. Kim,* 10 Haw.App. 461, 878 P.2d 725, *cert. denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994), that "[w]ith respect to claims for fraud or deceit, the only damages generally recoverable are *'pecuniary damages'*; *i.e.,* damages which will 'put the plaintiff in the position he would have been had he not been defrauded' and 'which can be accurately calculated in monetary terms such as loss of wages and cost of medical expenses." *Id.* at 482–83, 878 P.2d at 736 (citing *Ellis,* 51 Haw. at 52–53, 451 P.2d at 820) (emphasis added).

### VII.

In sum, the court's treatment of the words "substantial pecuniary loss" as establishing a threshold requiring *substantial* amounts of damages to prove the injury element of actions for fraud or deceit is incorrect.[9] As discussed *supra,* a threshold construction of the word "substantial" is not supported by the origins of the term, interpretation of the

---

9. It also may have unintended consequences. For example, class action suits are often for small sums per individual plaintiff, but the aggregate may be enormous when combining the total

term by other jurisdictions,[10] or our own case law. Therefore, the word "substantial" does not mean a threshold amount of pecuniary loss that the plaintiff must satisfy in order to recover, as the court apparently believed. Insofar as the term "substantial" connotes pecuniary damages of a particular amount rather than the concreteness of pecuniary loss, it is misleading and is best consigned to past cases.

## VIII.

The court apparently construed the Picos' claim of negligence as one for negligent mis-representation,[11] as shown by its statements during the hearing on Cutter's motion [12] for summary judgment:

[CUTTER]: And on that basis I ask that the Court dismiss their fraud claims for failing to show substantial pecuniary loss as well as misrepresentation claims.

THE COURT: So as far as any negligence or fraud, those would be the negligence and fraud claims?

[CUTTER]: Yes.

THE COURT: There's no other—*I don't think I saw any other negligence*

---

damage sustained by the class. A threshold construction would bar such actions, when such suits would may be appropriate. *See, e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997) (disagreeing with the trial court's determination that recovery of between 28 cents and $12.00 per potential class member out of a total $100,000 was a bar to a class action, stating "we believe that a de minimis recovery (in monetary terms) should not automatically bar a class action. The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

Aggregating the damage of the class presents its own problems under a threshold rubric. Even assuming that each plaintiff's "insubstantial loss" may be aggregated for purposes of meeting such a substantiality threshold, an individual plaintiff's claim, prior to certification, remains vulnerable to dismissal. Many class action lawsuits are initially begun by one plaintiff, who files a complaint, and thereafter, attempts to certify the class. A defendant may file a Rule 12(b) motion to dismiss for failure to state a claim prior to this certification. Accordingly, a race to the courthouse may be created, wherein a defendant who requests dismissal quickly may evade tort liability, and a plaintiff with damage not reaching the threshold must certify the class before such a motion eliminates the plaintiff's claim. At the very least, this would have the effect of chilling individual plaintiffs from pursuing actions, thereby allowing large-scale fraud when damage to individual plaintiffs is minimal, and, thus, does not meet the "substantial" threshold.

10. Most jurisdictions simply require a showing of some pecuniary loss or damage. *See, e.g., Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629, 632 (1982) ("We believe that the Baxters should be allowed to show what pecuniary loss they have sustained as a result of their reliance upon the defendants' misrepresentation as to the tax credit."); *B & B Asphalt Co. v. T.S. McShane Co.*, 242 N.W.2d 279, 285 (Iowa 1976) ("A successful plaintiff in a fraud case is entitled

to recover for his actual pecuniary loss sustained as a direct result of the wrong."); *UPS v. Rickert*, 996 S.W.2d 464, 469 (Ky.1999) ("In an action for fraud, it is not necessary to prove the amount of damages with certainty, but only to establish with certainty the existence of damages."); *Crowley v. Global Realty, Inc.*, 124 N.H. 814, 474 A.2d 1056, 1058 (1984) ("The general rule is therefore that the measure of damages recoverable for misrepresentation, whether intentional or negligent, is actual *pecuniary* loss."); *Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996) ("The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule[.]" (Internal quotation marks and citation omitted.)); *Metropolitan Life Ins. Co. v. Haney*, 987 S.W.2d 236, 245 (Tex.Ct.App.1999) ("To recover for fraud, the plaintiff must plead and prove he suffered a pecuniary loss as a result of the false representation upon which he relied.").

11. Our case law indicates that a negligent misrepresentation requires that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." *Blair*, 95 Hawai'i at 269, 21 P.3d at 474 (citing *Kohala Agric. v. Deloitte & Touche*, 86 Hawai'i 301, 323, 949 P.2d 141, 163 (1997); *Restatement (Second) of Torts* § 552). As to the adequacy of the other elements of negligent misrepresentation, it appears the court did not reach these matters. Accordingly, I do not address the other elements of this claim.

12. As to any claim of simple negligence by the Picos, I would note that Cutter, correctly, did not advance a similar argument that there is a threshold requirement for damage in a negligence action. Instead, Cutter argues that any simple negligence claim fails on the element of duty, inasmuch as, according to Cutter, it owes no duty to the Picos.

**336**

*claim. I mean it's negligent misrepresentation,* the fraud or deceit which—and the contract claims.

Negligent misrepresentation occurs when

> [o]ne who, in the course of his [or her] business, profession or employment, or in any other transaction in which he [or she] has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for *pecuniary* loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.

*Restatement (Second) of Torts* § 552, at 126–27 (emphasis added).[13] Although the court determined that the term "substantial" imposes a threshold amount for fraud or deceit actions, this jurisdiction in *Chun v. Park,* 51 Haw. 462, 462 P.2d 905 (1969), expressly adopted the elements set forth in *Restatement (Second) of Torts* § 552 for negligent misrepresentation. *See id.* at 468, 462 P.2d at 909. *See also State by Bronster v. United States Steel Corp.,* 82 Hawai'i 32, 919 P.2d 294, 304 (1996) ("[B]oth [Restatement (Second) of Torts § ] 552, and this court in *Chun,* recognize that pecuniary losses are recoverable in a claim for negligent misrepresentation. Section 552(1) expressly states that liability will attach 'for pecuniary loss caused

... by [plaintiff's] justifiable reliance upon the information[.]" (Emphasis in original.)). *See also Kohala Agric. v. Deloitte & Touche,* 86 Hawai'i 301, 323, 949 P.2d 141, 163 (1997). This court's prior case law confirms that a prima facie case for negligent misrepresentation requires only proof of some *pecuniary* injury.[14] The Picos have alleged that.

## IX.

Accordingly, the court's interpretation of the word "substantial" was incorrect, as it apparently requires a sizable amount of damage and, as indicated in the preceding discussion, was wrongly applied. The court specifically granted summary judgment for Cutter regarding all the Picos' tort claims using this incorrect application of the "substantial pecuniary damage" standard. Therefore, the court erred when it granted Cutter's motion for summary judgment.

With the foregoing elaboration, I agree with the disposition of this case by the majority.

---

**13.** Although not specifically cited to by either party, the court apparently believed that the *Restatement (Second) of Torts* § 552, which provides a cause of action for "information negligently supplied for the guidance of others in their business transactions[,]" *id.,* applied in the present situation. It is unclear whether the Picos' rely upon other Restatement sections in support of their generically described "action in tort[.]"

In addition to fraudulent misrepresentations, the *Restatement (Second) of Torts* provides for a variety of tort actions based upon concealment or nondisclosure, the liability for which depends upon the culpability of the defendant. For example, intentional concealment or nondisclosures, *see id.* at § 550 ("One party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability to the other, for pecuniary loss as though he had stated the nonexistence of the matter that the other was thus prevented from discovering."); § 551 (duty of disclosure in business transactions), negligent misrepresentations, *see* § 552, and innocent mis-

representations, *see* § 552C (misrepresentations of a material fact in a sale, rental or exchange transaction with another).

All of these tort actions allow for "pecuniary loss," unmodified by the terms "substantial" or "actual."

**14.** Accordingly, adopting the "substantial" threshold also leads to an inconsistent result when comparing fraud or deceit (intentional misrepresentation), with negligent misrepresentation. An erroneous construction of the term "substantial" in deceit or fraud cases may result in two different standards of damage, one for intentional misrepresentation (substantial amount of pecuniary damages) and another for negligent misrepresentation (no threshold, only pecuniary damages). The untoward result would be that a plaintiff with minimal damages would be able to recover from a defendant who had acted only negligently, while the same plaintiff with the same damage would not be able to recover from a defendant who had acted fraudulently.